Kovey Amanette **CERVANTES–PETER-SON** aka Kovey Peterson Cervantes aka Kovey Turner Cervantes, Appellant,

v.

**TEXAS DEPARTMENT OF FAMILY & PROTECTIVE SERVICES,**
Appellee.

No. 01–05–00307–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 3, 2006.

Gary Michael Polland, Polland & Associates, Houston, TX, for Appellant.

Michael A. Stafford, Harris County Attorney, Sandra D. Hachem, Senior Assistant County Attorney, Houston, TX, for Appellee.

En Banc court consists of Chief Justice RADACK and Justices TAFT, NUCHIA, JENNINGS, KEYES, ALCALA, HANKS, HIGLEY, and BLAND.

## EN BANC OPINION

TERRY JENNINGS, Justice.

In this accelerated appeal,[1] appellant, Kovey Amanette Cervantes–Peterson a/k/a Kovey Peterson Cervantes a/k/a Kovey Turner Cervantes ("Cervantes"), challenges the trial court's decree, entered after a bench trial, terminating her parental rights to her minor child, J.M. In her first and second issues, Cervantes contends that the evidence is legally and factually insufficient to support the trial court's findings that she engaged in conduct or knowingly placed J.M. with persons who engaged in conduct which endangered the physical or emotional well-being of J.M.[2] and that termination of the parent-child relationship between Cervantes and J.M. was in J.M.'s best interest.[3] In her third issue, Cervantes contends that her Fourteenth Amendment[4] right of due process of law was violated when the trial court ordered her parental rights terminated. In her fourth issue, Cervantes contends that the trial court erred in naming the Texas Department of Family and Protective Services ("DFPS") as the sole managing conservator of J.M.

We affirm.

## Factual and Procedural Background

On July 15, 2004, DFPS filed a petition for conservatorship and to terminate Cervantes's parental rights to her son, J.M., alleging that Cervantes gave birth to J.M. with cocaine in his blood. J.M. was about six months old when the trial commenced, and he had been in the care of DFPS since his birth.

Cervantes testified that she has three other children, D.B., N.C., and B.C. Cervantes was also expecting a fifth child at the time of trial. She explained that DFPS is the conservator for N.C., B.C., and J.M. Like J.M., N.C. and B.C. were both born with cocaine in their blood. After N.C. and B.C. had tested positive for cocaine, Cervantes attended required counseling concerning the use of narcotics. Cervantes had successfully completed a drug rehabilitation program after the birth of B.C. and nearly completed another program after the birth of N.C. Cervantes stated that she had not used cocaine "until right before" she had J.M. and that the narcotics use probably occurred around the ninth month of her pregnancy.

Since J.M.'s exposure to cocaine was discovered, Cervantes explained that she had been trying to get help with her narcotics problem but had a difficult time getting into various programs. Cervantes explained that the "Choices" drug rehabilitation program recommended by her caseworker was overcrowded. She stated that, on two occasions in the past two or three months, she had waited in line early in the morning, but was turned away when the program had become full. Cervantes also stated that she had attempted to enroll in two other programs, including one where

---

1. *See* Tex. Fam.Code Ann. § 263.405(a) (Vernon Supp.2005).

2. *See* Tex. Fam.Code Ann. § 161.001(1)(E) (Vernon Supp.2005).

3. *See* Tex. Fam.Code Ann. § 161.001(2) (Vernon Supp.2005).

4. U.S. Const. amend. XIV.

she had previously completed drug rehabilitation, but both programs would not accept her because she no longer qualified for Medicaid.

At the time of the trial, Cervantes had not taken a random narcotics test in six months. She testified that she was not currently using narcotics and had not used narcotics in "a long time," explaining that she had last used narcotics around the time of J.M.'s birth. However, Cervantes later admitted that she had used marijuana "like two months ago," but stated that marijuana was the only narcotic that she had used since J.M.'s birth. She agreed that this meant she had used marijuana during her current pregnancy, but explained that, at that time, she was unaware that she was pregnant.

Cervantes visited J.M. four or five times since he was placed in the care of DFPS. She conceded that she had been late to some of her appointments with him because "it's so far away from [her] home." Cervantes explained that she has her General Education Diploma, is currently in school, and intends to obtain a certificate to work in the medical field. Cervantes lives with her mother and has been living there since her grandmother died. She stated that she would be able to provide for J.M. at her mother's residence and that she had been "doing things" to meet DFPS's requirements, but that her grandmother's recent death had taken a toll on her. She stated that she was trying to get back on her feet and she "just need[ed] more time." Cervantes said that she would not use narcotics again and that she wants her children returned to her. After the trial court reset the case for three weeks, to allow for a home study on the father's family, Cervantes further testified that, since the case had been reset, she had been accepted into the "DAPA" drug rehabilitation program and had started classes in the program the day prior to the hearing. She also explained that, during the same time, she had missed two scheduled visits with J.M. due to an illness.

Lisa Kay Mendez, a caseworker for DFPS, testified that Cervantes had not followed through with the family services plan provided by DFPS except for an initial psychological evaluation. Mendez explained that the evaluator had recommended individual counseling, parenting classes, and random urine analysis. DFPS referred Cervantes to counseling, and the counselor contacted Cervantes for two appointments, but Cervantes failed to show up to either session. Cervantes also did not follow through with the parenting classes or random urine analysis that were to be a part of her out-patient services. Mendez testified that the only financial assistance or support that Cervantes had provided to J.M. since his being in the care of DFPS were Christmas presents at a recent visit. She also noted that Cervantes had missed three of seven scheduled visitations with J.M. despite those visits being regularly scheduled on Cervantes's days off.

Mendez further testified that J.M. is currently in a foster home with his siblings, N.C. and B.C., and that they seem to be bonding in that foster home. She stated that J.M. is an adoptable child and that the home where he had been placed is interested in adopting him. Mendez also explained that J.M. is being seen at a pediatric clinic because of his pre-birth narcotics exposure and that he has an undescended testicle that would require an operation.

Mendez stated that CPS was not willing to give Cervantes more time to participate in drug rehabilitation because Cervantes was fully aware of what was expected from her and had been given enough time to complete services, and yet she only com-

pleted a psychological evaluation. Mendez stated that she believed it would be in J.M.'s best interest for Cervantes's parental rights to be terminated.

On February 8, 2005, at the conclusion of the bench trial, the trial court found "by clear and convincing evidence . that the mother's rights are terminated as per 161.001(1)(E) and in the best interest of the child."[5] On March 1, 2005, the trial court entered a decree terminating the parental rights of Cervantes, as well as those of the father, Jose Antonio Moncivais, and appointing DFPS as the child's sole managing conservator because Cervantes:

> Engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.001(1)(E) of the Texas Family Code.[6]

### Standard of Review

■ A parent's right to "the companionship, care, custody, and management" of her children is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982). The United States Supreme Court has emphasized that "the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). Likewise, the Texas Supreme Court has also concluded that "this natural parental right" is "essential," "a basic civil right of man," and "far more precious than property rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985). Con-

sequently, termination proceedings must be strictly scrutinized, and "involuntary termination statutes are strictly construed in favor of the parent." *Id.*

■ Because termination "is complete, final, irrevocable, and divests for all time that natural right . . . the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." *Id.* (citing *Santosky*, 455 U.S. at 747, 102 S.Ct. at 1391; *Richardson v. Green*, 677 S.W.2d 497, 500 (Tex.1984)). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam.Code Ann. §'101.007 (Vernon 2002); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex.2002). Because termination findings must be based upon clear and convincing evidence, not simply a preponderance of the evidence, the Texas Supreme Court has held that the traditional legal and factual standards of review are inadequate. *In re J.F.C.*, 96 S.W.3d at 264–66. Instead, in conducting a legal sufficiency review in a termination-of-parental-rights case, we must determine whether the evidence, viewed in the light most favorable to the finding, is such that the fact finder could reasonably have formed a firm belief or conviction about the truth of the matter on which the State bore the burden of proof. *See id.* at 266. In viewing the evidence in the light most favorable to the judgment, we "must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could [have done] so," and we "should disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible." *In re*

---

5. *See* Tex. Fam.Code Ann. §§ 161.001(1)(E), 161.001(2) (Vernon Supp.2005).

6. Tex. Fam.Code Ann. § 161.001(1)(E).

*J.P.B.*, 180 S.W.3d 570, 573 (Tex.2005) (citing *In re J.F.C.*, 96 S.W.3d at 266). In conducting a factual sufficiency review in a termination-of-parental-rights case, we must determine whether, considering the entire record, including both evidence supporting and evidence contradicting the finding, a fact finder reasonably could have formed a firm conviction or belief about the truth of the matter on which the State bore burden of proof. *Id.; In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002). We should consider whether the disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266–67. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* at 266.

### Grounds for Termination

■ In proceedings to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, DFPS must establish, by clear and convincing evidence, one or more of the acts or omissions enumerated under subsection (1) of section 161.001 and that termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001 (Vernon Supp. 2005). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). Here, the trial court, in ordering the termination of Cervantes's parental rights as to J.M., expressly found that Cervantes "engaged in conduct or

knowingly placed [J.M.] with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of [J.M.]" TEX. FAM.CODE ANN. § 161.001(1)(E) (Vernon Supp.2005).

DFPS contends, however, that this court "must affirm the trial court's judgment with respect to any ground for termination supported by the record which [Cervantes] failed to challenge in the appeal." DFPS asserts that the trial court could have made an implied finding that Cervantes "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child." *See* TEX. FAM.CODE ANN. § 161.001(1)(D) (Vernon Supp.2005). DFPS argues that Cervantes's "failure to challenge the trial court's implied finding under (D) obviates the necessity of considering her challenge to the court's ... finding under subsection (E)."

In support of its argument, DFPS relies on *Thompson v. Texas Department of Family and Protective Services*, 176 S.W.3d 121 (Tex.App.-Houston [1st Dist.] 2004, pet. denied). In *Thompson*, we rejected a father's argument that "the trial court's only basis for termination was under Family Code section 161.001(1)(O) [7] because this was the only ground for termination recited in the judgment." *Id.* at 125. Citing Texas Rule of Civil Procedure 299a, [8] DFPS also asserts that findings of fact may not be recited in a judgment. DFPS reasons that because the trial court's finding that Cervantes "engaged in conduct or knowingly placed [J.M.] with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of [J.M.]" is recited in the decree, the trial court did not make any

---

7.  *See* TEX. FAM.CODE ANN. § 161.001(1)(O) (Vernon Supp.2005).

8.  *See* TEX.R. CIV. P. 299a.

formal findings that this Court must treat as the sole basis for the trial court's judgment. *See id.*

Essentially, DFPS is asserting that in every parental termination case, regardless of any express ground relied upon by the trial court in a termination order, a reviewing court may consider the sufficiency of the evidence to support termination of parental rights under any of the nineteen other grounds specified in section 161.001(1) and affirm the termination of parental rights if the parent fails to challenge on appeal grounds not found in the termination order but supported by the evidence. Specifically, DFPS asks this Court to affirm the trial court's termination of Cervantes's parental rights on the ground that, in violation of section 161.001(1)(D), Cervantes knowingly placed or knowingly allowed J.M. to remain in conditions or surroundings which endangered the physical or emotional well-being of J.M., even though the trial court did not make any such express finding in its decree. *See* Tex. Fam.Code Ann. § 161.001(1)(D).

Section 161.001 provides, in pertinent part:

> The court may order termination of the parent-child relationship if the court *finds* by clear and convincing evidence:
> (1) that the parent has:
> . . . .
> > (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
> > (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
> . . . .

Tex. Fam.Code Ann. § 161.001(1)(D), (E) (emphasis added). Thus, as noted by DFPS, the trial court could have properly terminated Cervantes's parental rights upon a finding, supported by sufficient evidence, that, in violation of subsection (1)(D), Cervantes knowingly placed or knowingly allowed J.M. to remain in conditions or surroundings which endangered the physical or emotional well-being of J.M.

However, consistent with our previous holding in *Vasquez v. Texas Department of Protective & Regulatory Services,* 190 S.W.3d 189, 194 (Tex.App.-Houston [1st Dist.] 2005, pet. denied), we reject DFPS's argument that we may affirm the trial court's decree on the basis of a subsection of section 161.001, which, although pleaded by DFPS in its original petition, was not expressly found to have been violated in the decree. As we noted in *Vasquez,* DFPS "appears to confuse the general rule in civil cases that findings should not be made in the judgment with the requirement that the findings in section 161.001 of the Texas Family Code be made in a parental-rights-termination order." *Id.* Under the Family Code, a trial court "shall render an order" terminating a parent-child relationship only "[i]f the court finds by clear and convincing evidence grounds for termination of the parent-child relationship." Tex. Fam.Code Ann. § 161.206(a) (Vernon Supp.2005). As we held in *Vasquez,* "a parental rights termination order can be upheld only on grounds both pleaded by [DFPS] and found by the trial court." 190 S.W.3d at 194. (stating, "we decline [DFPS's] invitation to uphold the trial court's termination order on a ground different from that stated in the order.").

■ The San Antonio Court of Appeals has described the type of findings of fact that, pursuant to Rule 299a, are to be

separately filed and may not be recited in a parental termination order. *In re A.I.G.*, 135 S.W.3d 687, 693–94 (Tex.App.-San Antonio 2003, no pet.). In *A.I.G.*, the trial court stated in its termination order that it found clear and convincing evidence that the mother engaged in conduct or knowingly placed her children with persons who engaged in conduct which endangered their physical or emotional well-being. *Id.* The mother argued that her appeal of the termination order should be abated because the order "did not contain specific positive findings" and because "the court's failure to identify the conduct upon which it relied in terminating her parental rights prevent[ed] her from knowing the exact grounds on which the trial court based its order." *Id.* The court stated, based on Rule 299a, that "[i]t would have been improper for the trial court to *describe the facts* supporting its judgment in the body of the judgment itself." *Id.* at 694 (emphasis added). However, the court noted that the trial court's judgment terminating the mother's parental rights tracked the language of section 161.001 by including a finding under the endangerment subsection and a finding of best interests. *Id.* The court concluded, "[t]his is all the Family Code requires the State to prove, and all the trial court is required to find." *Id.*

The trial court's "findings" in the termination order in this case, which are expressly required by section 161.206 of the Family Code, and which track the language of section 161.001(1)(E) of the Family Code, are not "findings of fact" prohibited by Rule 299a. The "findings" simply articulate the trial court's grounds for terminating parental rights. Accordingly, we overrule this Court's previous holding in *Thompson* that such findings made in a judgment, which are required by statute, cannot form the basis of an appeal, and we hold, following *Vasquez*, that we review the sufficiency of the evidence presented under the specific statutory grounds found by the trial court in its termination order. *See Vasquez,* 190 S.W.3d at 194.[9]

## Sufficiency of the Evidence

In her first and second issues, Cervantes contends that the evidence is legally and factually insufficient to support the trial court's findings that she "engaged in conduct or knowingly placed [J.M.] with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of [J.M.]" and that termination of her parental relationship as to J.M. was in J.M.'s best interest. Cervantes argues that the evidence is legally and factually insufficient to support the trial court's findings because no "medical evidence was introduced to prove that [J.M.] had been exposed to drugs pre-birth or that he had been placed in danger." Cervantes also asserts that "[t]here was no medical evidence offered to prove that [Cervantes] had drugs in her system at the time she gave birth to [J.M.]"

### *Endangerment*

■■■■ Under section 161.001(1)(E) of the Family Code, a court may terminate the parent-child relationship if the court finds by clear and convincing evidence that

---

9.  Of course, any number of implied findings of fact may support a trial court's parental termination order. However, as noted above, the order must state the ground or grounds upon which the trial court relies in terminating parental rights. Tex. Fam.Code Ann. § 161.206 (Vernon Supp.2005). For example, evidence that a child is born with narcotics in his system may support an implied finding of ongoing parental narcotics use that is germane to more than one statutory ground for termination. But, pursuant to the statute, the trial court must articulate the statutory grounds supporting its termination of parental rights. *Id.*

the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E). "Endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533. Although such endangerment requires more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex.App.-Fort Worth 2003, no pet.). The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533; *In re R.W.*, 129 S.W.3d 732, 738 (Tex.App.-Fort Worth 2004, pet. denied). To determine whether termination is necessary, courts may look to parental conduct occurring both before and after the child's birth. *In re D.M.*, 58 S.W.3d 801, 812 (Tex.App.-Fort Worth 2001, no pet.). Also, the manner in which a parent treats other children in the family can be considered in deciding whether that parent engaged in a course of conduct that endangered the physical or emotional well-being of a child. *In re D.L.N.*, 958 S.W.2d 934, 939 (Tex.App.-Waco 1997, pet. denied).

A mother's use of narcotics during pregnancy may constitute conduct that endangers the physical and emotional well-being of a child. *In re W.A.B.*, 979 S.W.2d 804, 807 (Tex.App.-Houston [14th Dist.] 1998, pet. denied); *see In re U.P.*, 105 S.W.3d 222, 234 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Dupree v. Tex. Dep't Protective and Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex.App.-Dallas 1995, no writ). Here, Cervantes admitted that she used cocaine near the end of her pregnancy with J.M. even though she knew it could be dangerous to the unborn child.

Moreover, Mendez testified that, immediately after J.M.'s birth, the child was placed in a neonatal intensive care unit, suffering withdrawal symptoms from exposure to cocaine. Although Cervantes complains that "no other medical evidence was introduced to prove that [J.M.] had been exposed to drugs pre-birth," we note that she admitted that she had used cocaine during the ninth month of her pregnancy with J.M. and that she had a serious recurring problem with narcotics. Testimony regarding Cervantes's narcotics use during pregnancy, and the distress suffered by the child after delivery, demonstrate that Cervantes harmed the physical well-being of the child. Thus, Cervantes's ingestion of cocaine while pregnant with J.M. did more than expose the child to injury—it brought about actual physical harm to the child.

Moreover, Cervantes's ingestion of cocaine before the birth of J.M. was not an isolated event, but was part of a course of conduct of the use of narcotics during four pregnancies. *See In re R.W.*, 129 S.W.3d at 739 (stating that court may consider narcotics use and its effect on parent's life and ability to parent as contributing to endangering course of conduct); *Dupree*, 907 S.W.2d at 84. Cervantes also testified that she used marijuana during her most recent pregnancy. Thus, her narcotics use continued after J.M. was removed from her care, in the face of periodic narcotics tests that placed her relationship with her child in jeopardy. *See In re J.N.R.*, 982 S.W.2d 137, 142 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (considering conduct jeopardizing parental rights as part of course of conduct endangering well-being of child). DFPS, as part of her service plan, required Cervantes to submit to random urine analysis; however, Mendez testified that Cervantes had yet to be tested for narcotics since J.M.'s birth. The use of narcotics and its effect on a parent's life

and her ability to parent may establish an endangering course of conduct. *Dupree*, 907 S.W.2d at 84. Despite Cervantes's contention that she had stopped using cocaine and marijuana, the trial court was not required to ignore her history of narcotics use merely because Cervantes testified that it had abated before trial. *See In re R.W.*, 129 S.W.3d at 741.

The fact that Cervantes ingested cocaine while pregnant with J.M. and the effect of Cervantes's use of narcotics on J.M. are not disputed. From this evidence, a fact finder could reasonably have formed a firm conviction or belief that Cervantes engaged in conduct which endangered the physical and emotional well-being of J.M. Accordingly, we hold that the evidence is legally sufficient to support the trial court's finding under section 161.001(1)(E) that Cervantes engaged in conduct that endangered the physical and emotional well-being of J.M. Moreover, considering both evidence supporting and contradicting the finding that Cervantes engaged in conduct which endangered the physical or emotional well-being of J.M., a fact finder reasonably could have formed such a firm conviction or belief. The fact that DFPS did not offer medical evidence to prove that Cervantes had cocaine in her system at the time she gave birth to J.M., or that J.M. had been exposed to cocaine before his birth, does not render the evidence supporting a finding that Cervantes engaged in conduct which endangered the physical or emotional well-being of J.M. factually insufficient. Accordingly, we hold that the evidence is factually sufficient to support the trial court's finding under section 161.001(1)(E).

### Best Interest of the Child

In determining whether termination is in the child's best interest, we may consider several factors, including, but not limited to, (1) the child's desires, (2) the current and future physical and emotional needs of the child, (3) the current and future physical danger to the child, (4) the parental abilities of the person seeking custody, (5) whether programs are available to assist the person seeking custody in promoting the best interests of the child, (6) plans for the child by the person seeking custody, (7) the stability of the home, (8) acts or omissions of the parent that may indicate that the parent-child relationship is not proper, and (9) any excuse for acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976); *In re L.M.*, 104 S.W.3d 642, 647 (Tex.App.-Houston [1st Dist.] 2003, no pet.). The burden is on DFPS to rebut the presumption that the best interest of the child is served by keeping custody in the natural parents. *In re K.C.M.*, 4 S.W.3d 392, 395 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). The *Holley* factors are not exhaustive, nor must all of the factors be proved as a condition precedent to terminate parental rights. *See In re C.H.*, 89 S.W.3d at 27. "The absence of evidence about some of these considerations would not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.*

Cervantes's use of narcotics, both during and after J.M.'s birth, endangered the welfare of J.M. and is relevant to the issue of best interest. Cervantes had a history of narcotics use that had already injured J.M. and would likely endanger the child in the future. Although Cervantes admitted to using cocaine while pregnant with J.M., knowing this was harmful to J.M., she then used marijuana, while pregnant with another child and after J.M. was placed in the care of DFPS, knowing this was incon-

sistent with efforts for her reunification with the child. Given Cervantes's long standing history of narcotics use during her pregnancies, and her failure to stay off narcotics despite her enrollment in two prior drug rehabilitation programs, a reasonable trier of fact could have determined that Cervantes would continue to endanger J.M.

Moreover, we note that Mendez testified that DFPS had placed J.M. in a home in which the foster parents are interested in adopting him. Mendez also indicated that J.M. is living with his other siblings and that they appear to be bonding. In comparison, Cervantes did not indicate that she could provide a stable or permanent home for J.M. At the time of trial, Cervantes's most recent relationship was with Jose Moncivais, the father of J.M., who also admitted at trial to being a current narcotics user. Specifically, at the trial resetting in February, when the court asked if he would test positive for narcotics use if he took a urine analysis that day, Moncivais admitted that he had smoked marijuana that very day.

Here, the critical factor in determining whether the termination of Cervantes's parental rights was in J.M.'s best interest is the fact that Cervantes used narcotics during her pregnancy and actually exposed J.M. to physical danger, and her continued use of narcotics would likely expose him to physical and emotional danger in the future. From these facts alone, a fact finder could have formed a firm conviction or belief that termination of Cervantes's parental rights was in J.M.'s best interest. Moreover, considering both evidence in support of the finding and contrary to the finding, a fact finder could have reasonably formed such a firm conviction or belief. Although Cervantes testified that she had successfully completed a drug rehabilitation program before the birth of J.M., she

in fact used cocaine while pregnant with him and used marijuana two months prior to trial and while pregnant with another child. Also, although Cervantes testified that she would be able to provide for J.M. while living with her mother, and that she was "in school," the evidence shows that she did not follow through with a DFPS family services plan, failed to show up for counseling appointments, and did not follow through with parenting classes or random urine analysis testing. Moreover, the only financial assistance or support that she gave to J.M. consisted of some Christmas presents. Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Cervantes's parental rights as to J.M. was in J.M.'s best interest.

We overrule Cervantes's first and second issues.

### Due Process

■■■ In her third issue, Cervantes contends that her "right of due process pursuant to the Fourteenth Amendment . . . was violated when the trial court ordered her parental rights terminated."

However, Cervantes has not separately argued how her right to due process of law was violated as a result of the trial court's termination of her parental rights. Because there is no discussion of this issue in the body of Cervantes's brief and no citation to supporting authority, we hold that Cervantes has presented nothing for our review. See *Richard v. Cornerstone Constructors, Inc.*, 921 S.W.2d 465, 469 (Tex. App.-Houston [1st Dist.] 1996, writ denied).

We overrule Cervantes's third issue.

### DFPS Conservatorship

In her fourth issue, Cervantes argues that "[i]n light of the fact that the evidence

is insufficient to support the court's decision to terminate [Cervantes's] parental rights, it follows that it was not in [J.M.'s] best interest that [DFPS] be granted sole managing conservatorship of [J.M.]." Having held that there is sufficient evidence to support the trial court's finding that the termination of Cervantes's parental rights was in J.M.'s best interest, we overrule Cervantes's fourth issue.

## Conclusion

We affirm the decree of the trial court.