Opinion issued February 10, 2011

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00241-CV

———————————

In the interest of P.G.F., A.S., and C.D.T., Children



 



 

On Appeal from the 309th District Court

Harris County, Texas



Trial Court Case Nos. 2005-04518 & 2006-27470

 



 

MEMORANDUM OPINION

This appeal
arises from a bench trial resulting in the termination of appellant S.S.’s
parental rights with respect to three of her biological children, P.G.F. and A.S. (trial court cause
number 2006-27470) and C.D.T. (cause number 2005-04518).  The mother has multiple other children who
are not at issue in this appeal.  In three issues, she contends that the
evidence is legally and factually insufficient to support each ground for the termination
of her parental rights and that the trial court erred in admitting certain
photographs and medical records into evidence. 
We affirm.

Procedural Background

After a bench trial lasting approximately
eight days, the trial court made several findings, based on clear and
convincing evidence, that the mother had committed predicate acts supporting a
termination of parental rights under Family Code section 161.001(1) with
respect to her children P.G.F.,
A.S., and C.D.T.  See Tex. Fam. Code Ann. § 161.001 (Vernon Supp.
2010).  The mother was found to have knowingly
placed the children in conditions or surroundings which endangered their
physical or emotional well-being, or to have knowingly allowed them to remain
in such conditions.  See id.
§ 161.001(1)(D).  She knowingly
placed them with persons who engaged in conduct which endangered their physical
or emotional well-being.  See id.
§ 161.001(1)(E).  She failed to
support the children in accordance with her ability during a period of one year
ending within six months of the date of the filing of the petition.  See
id. § 161.001(1)(F).  And she failed
to comply with the provisions of a court order that specifically established
the actions necessary for her to obtain the return of the children, who had
been in the permanent or temporary managing conservatorship of the Department
of Family and Protective Services as a result of their removal from the mother
for her abuse or neglect of the children. 
See id. § 161.001(1)(O).

The trial court also found by clear
and convincing evidence that termination of the mother’s parent-child
relationship with each of P.G.F., A.S., and C.D.T. was in the
best interest of the children.  See id. § 161.001(2).  Accordingly, the trial court entered final
judgments terminating the mother’s parental rights as to each of them.  The
mother filed timely motions for a new trial and statements of appellate
points.  See id. §  263.405(b) (Vernon 2008).  The trial court denied the motions for new
trial, noted the mother’s indigence, and determined that an appeal would be frivolous.
 See id. § 263.405(d), (e).  The trial court also ordered expedited
preparation of the record of the frivolousness hearing, which was provided to the
mother without advance payment.  See id. § 263.405(g).

This appeal ensued, with both the
mother and DFPS submitting appellate briefs addressing the trial court’s
finding that the appeal was frivolous.  See id. 
The court reporter was ordered to prepare and file, without cost to the
mother, the reporter’s record containing all of the recorded testimony and
evidence admitted at the bench trial on the merits.  Quoting Family Code section 263.405(g), the
same order directed the mother, after reviewing the reporter’s record, to file
an amended brief “presenting arguments ‘on the issues presented.’”  The parties proceeded to file amended briefs
addressing the merits of the mother’s appellate points with the benefit of a
complete record prepared at no cost to the mother.

Analysis

I.                 
Evidentiary challenges

a.     Photographs

In her second issue, the mother
argues that the trial court erred in admitting seven photographs that
“purported to be photographs of the children” because the photographs “were not
properly identified or authenticated and were not admissible under any other
ground stated by [DFPS].”  The mother
asserts that, at the time the photographs were admitted, which was during the
testimony of C. Horne, the child advocate, DFPS did not ask Horne “if she
was familiar with the children in the photographs” or if the photographs
depicted “accurate representations of the children at the time the photographs
were taken.”  The mother complains that
DFPS “merely asked if Ms. Horne had examined the photographs.”

The photographs at issue are seven
photographs taken of the children in 2005 and 2006.  In response to questioning by DFPS, Horne
confirmed that these photographs of the children were contained in the file of
Children’s Protective Services. 
Specifically, the photographs depicted two of the children’s full body
and closer shots of their backs, arms, and faces.  Some of the photographs depict what appears
to be bruising and other injuries.

We review a trial court’s ruling
admitting photographs into evidence for an abuse of discretion.  In re
K.Y., 273 S.W.3d 703, 709 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  Thus, we will not overturn such a decision if
it falls within the zone of reasonable agreement.  Id.

In regard to any complaint about
the authentication of the photographs, Horne’s testimony confirms that the
photographs are contained in the CPS file and are two of the minor children who
are the subject of the underlying suit. 
Prior to Horne’s testimony, another DFPS caseworker had confirmed that
DFPS had in its file photographs of the children.  Thus, there is evidence in the record
supporting an implied finding by the trial court that the photographs at issue
were of the mother’s minor children and that they were properly
authenticated.  See Tex. R. Evid.
901.

To the extent that the mother’s
second issue is more properly construed as presenting a general challenge to
the relevancy of the photographs, in part because they were taken in 2005 and
2006, “photographs are admissible if oral testimony as to the matters depicted
in the photographs is also admissible.”  K.Y., 273 S.W.3d at 709.  Here, the photographs depict some visible
bruising and other marks on two of the children.  Accordingly, the trial court could have
reasonably determined that the photographs were relevant to show an ongoing
pattern of mistreatment, neglect, or abuse at the time the children were
removed from the control of the mother and that they would help the jury in
understanding the testimony presented by DFPS on these issues.  See id.

b.    Medical records

          In
her third issue, the mother argues that the trial court erred in admitting into
evidence medical records from her inpatient treatment facility because the
trial court’s order allowing the admission of the evidence did not comply with
the Health Insurance Portability and Accountability Act or related federal
regulations.

          At
trial, the attorney ad litem explained to the court that she had subpoenaed the
mother’s file from her treatment facility. 
She indicated that she had done so because Ms. O’Keke, a doctor at the
facility, was potentially going to testify on the mother’s behalf.  The following exchange occurred:

[attorney
ad litem]:        . . . . I subpoenaed the
complete file, the intake forms, all counseling records and notes for [the
mother], all discipline records or infraction regarding [the mother], all drug
test results regarding [the mother], the rules and regulations regarding the
New Hope program and any and all records and/or documents regarding [the
mother], . . . .

 

          . . . .

 

[mother’s
counsel]:        Your honor, I understand
that an agency that have clients with substance abuse, mental issues are under
HIPPA rules and some of the things that [she] asked for are not subject to
subpoena.

 

We have agreed to give her
everything that sets out that [the mother] has followed her service plan, such
as the UA’s, certificates of completion, but therapy notes that has to do with
the intimate details of her past and those things that she talked about with
the therapist, we believe should be privileged and that they don’t fall under
the subpoena.

 

          . . . .

 

[attorney
ad litem]:        If Ms. O’Keke is going
to take the stand and give her opinion in regards to how [the mother] is doing,
she’s basing that on everything that she’s done with [the mother] and I think I
have a right to look at those notes to see what she’s basing her
recommendations on and to look at those, and I don’t have access to anything
other than speaking with Ms. O’Keke.

 

[mother’s
counsel]:        There are therapy notes
that we don’t have any problem—

 

The trial court then announced it
would order that the mother’s entire file be produced for an “in-camera
inspection of the therapy notes to determine what [it would] release.”  The ad litem agreed with this procedure, and
the mother’s counsel made no objections or any other statements in regard to
the trial court’s intention to conduct in camera inspection and determine what
records from the facility could be released. 
The following day, the ad litem inquired of the trial court whether it
had conducted the in-camera inspection. 
The trial court responded that it had and stated, “[M]y ruling is, I
think they’re available for anybody here in the courtroom to review.”  Again, the mother’s counsel made no objection
or any other statements on the record.

With her initial comments regarding
HIPPA rules, the mother never identified to the trial court which specific
documents could not be produced and subsequently admitted under HIPAA.  In fact, at the end of the exchange, she
agreed that there were certain therapy notes in the file to which she would not
object.  When the trial court announced
that it intended to conduct an in-camera inspection, and when the trial court
announced the following day that it was making the records available to the
parties, the mother again did not complain of any specific documents that
should not be admitted.  She also failed
to assert any objection at either time. 
Thus, the mother waived any complaint to the production and or admission
of her records from the treatment facility. 
See Tex. R. App. P. 33.1.  

II.              
Legal and factual sufficiency

The mother challenges the legal and
factual sufficiency of the evidence to support the judgments terminating her
parental rights as to three of her children. 
In proceedings to terminate the parent-child relationship brought under
Texas Family Code section 161.001, DFPS must establish one or more of the acts
or omissions enumerated under section 161.001(1) and that termination is
in the best interest of the child.  Tex. Fam. Code Ann. § 161.001.  Both elements must be established, and
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex. Dep’t of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987).  A trial
court’s decision to terminate parental rights must be supported by clear and
convincing evidence.  In re J.F.C., 96 S.W.3d 256, 263–64
(Tex. 2002); In re V.V., No.
01-08-00345-CV, 2010 WL 2991241, at *4 (Tex. App.—Houston [1st Dist.] July 29,
2010, pet. denied) (en banc).  “‘Clear
and convincing evidence’ means the measure or degree of proof that will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established.” 
Tex. Fam. Code Ann. § 101.007
(Vernon 2008).

“[I]n conducting a legal
sufficiency review in a termination-of-parental-rights case, we must determine
whether the evidence, viewed in the light most favorable to the finding, is
such that the fact finder could reasonably have formed a firm belief or conviction
about the truth of the matter on which the State bore the burden of
proof.”  Cervantes-Peterson v. Tex. Dep’t of Family & Protective Servs.,
221 S.W.3d 244, 249 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc)
(citing In re J.F.C., 96 S.W.3d at
266).  “In viewing the evidence in the
light most favorable to the judgment, we ‘must assume that the fact finder
resolved disputed facts in favor of its finding if a reasonable fact finder
could [have done] so,’ and we ‘should disregard all evidence that a reasonable
fact finder could have disbelieved or found to have been incredible.’”  Id.
(quoting In re J.P.B., 180 S.W.3d
570, 573 (Tex. 2005)).  

“In conducting a factual
sufficiency review in a termination-of-parental-rights case, we must determine
whether, considering the entire record, including both evidence supporting and
evidence contradicting the finding, a fact finder reasonably could have formed
a firm conviction or belief about the truth of the matter on which the State
bore [the] burden of proof.”  Id. (citing J.P.B., 180 S.W.3d at 573; In
re C.H., 89 S.W.3d 17, 25 (Tex. 2002)). 
“We should consider whether the disputed evidence is such that a
reasonable fact finder could not have resolved the disputed evidence in favor
of its finding.”  Id. (citing J.F.C., 96
S.W.3d at 266–67).  “‘If, in light of the
entire record, the disputed evidence that a reasonable fact finder could not
have credited in favor of the finding is so significant that a factfinder could
not reasonably have formed a firm belief or conviction, then the evidence is
factually insufficient.’” Id.
(quoting J.F.C., 96 S.W.3d at 266).

a.    
Waiver of
complaints about Section 161.001(1) findings

The trial court made findings by
clear and convincing evidence under four separate provisions of
section 161.001(1) to support an involuntary termination of the mother’s
parent-child relationship with the three children involved in this appeal.  The trial court made the requisite findings
under section 161.001(1)(D), (E), (F), and (O). 
“Only one predicate finding under section 161.001(1) is necessary to
support a judgment of termination when there is also a finding that termination
is in the child’s best interest.”  In re A.V., 113 S.W.3d 355, 362 (Tex.
2003).

In her timely filed statement of
appellate points and motion for new trial, the mother challenged only three of
the four section 161.001(1) findings. 
She did not challenge the trial court’s finding under
section 161.001(1)(O).  The
Legislature has instructed us not to consider any issue that was not
specifically presented to the trial court in a timely filed statement of the
points on which the mother intended to appeal or in a statement combined with a
motion for new trial.  See Tex.
Fam. Code Ann. § 263.405(i). 
The mother did not argue in the trial court that section 263.405(i)
is unconstitutional to the extent it required her to timely present her
section 161.001(1)(O) argument to the trial court in order to preserve it
for appeal.  The mother has not argued,
either in the trial court or on appeal, that any of her counsel rendered
ineffective assistance by failing to include in the statement of appellate
points or motion for new trial an argument that the evidence was insufficient
to support a finding under section 161.001(1)(O).  See In
re M.S., 115 S.W.3d 534, 548–49 (Tex. 2003). Accordingly, we conclude that
the mother has waived her complaints about the legal and factual sufficiency to
support the trial court’s finding of one or more of the acts or omissions
enumerated under section 161.001(1). 
See J.P.B., 180 S.W.3d at 574
(holding legal sufficiency point was waived when parent did not allege in the
court of appeals or in the Supreme Court that her trial counsel “unjustifiably
failed to preserve a ‘no evidence’ issue”).

b.   
Sufficiency
of the evidence to support Section 161.001(2) best-interest findings

We turn to the mother’s sufficiency
challenges to the trial court’s best interest finding under section 161.001(2).  In determining whether termination of the
mother’s parental rights was in the children’s best interest, we may consider
several factors including (1) the children’s desires, (2) the current
and future physical and emotional needs of the children, (3) the current
and future physical danger to the children, (4) the parental abilities of
the person seeking custody, (5) whether programs are available to assist
the person seeking custody in promoting the best interests of the children, (6) plans
for the children by the person seeking custody, (7) the stability of the
home, (8) acts or omissions of the parent that may indicate that the
parent-child relationship is not proper, and (9) any excuse for acts or
omissions of the parent.  Holley v. Adams, 544 S.W.2d 367, 371–72
(Tex. 1976); V.V., 2010 WL 2991241,
at *7.  The Holley factors are not exhaustive, and there is no requirement that
DFPS prove all factors as a condition precedent to parental termination.  See C.H.,
89 S.W.3d at 27.

In regard to the desires of the
children, C. Hammonds, a family counselor, testified that the children
told her that they wanted to “live with” or “stay” with their foster parents rather
than their biological mother.  Based upon
her counseling, she also recommended that the foster parents adopt the children.
 The child advocate, C. Horne,
testified that one of the children had spoken to him about his desire to stay
with the foster parents and expressed that he was “fearful” of being returned
to his mother.  Another child expressed
her desire to stay with the foster parents. 
The foster father and potential adoptive parent testified that one of
the children had “anxiety” before visitations with the mother.

In regard to the current and future
physical and emotional needs of the children and the current and future
physical danger to the children, DFPS presented evidence that the mother had a
long history of narcotics use and other criminal activity, including at least
one period of incarceration, and that the mother also had a history of being
abusive to her children and endangering their welfare.  It also presented evidence that the mother had
left her children with others with the knowledge that they were serious narcotics
users and were physically abusive to her children.  Moreover, at the time of trial, the mother was
not employed and would not have any means to obtain employment or provide a
stable home for the children.

In regard to the mother’s parental
abilities, DFPS presented evidence that she gave birth to a baby during the
pendency of the case and that this baby tested positive for having cocaine in
his system.  C.B., a friend of the
mother, testified that the mother abused her children and had a history of
working as a crack cocaine dealer.  C.B.’s
mother, A.T., testified that appellant S.S. had even been C.B.’s dealer.  There is also evidence that the mother had
left her children with C.B. for significant periods of time while she sold
narcotics. The trial court also could have determined that the mother was not
credible or trustworthy, based upon the mother’s testimony about her narcotics
use and narcotics history, which conflicted with other substantial evidence
presented by DFPS.

In regard to the remaining factors,
there is no evidence that the mother would have any means to independently
provide for the children even if she successfully completed the in-patient care
she was undergoing.  DFPS also presented
evidence that the facility where the mother was residing could not house
children, although the mother did present conflicting evidence on this
point.  The record before us contains
evidence that the foster parents, who sought to adopt the children, provided a
stable and safe environment and that the children’s behavior had significantly improved
after being placed with the foster parents.

In sum, the record before us
establishes that the evidence is legally and factually sufficient to support the
trial court’s finding that that termination of the mother’s parental rights to
the children was in their best interest.  Tex.
Fam. Code Ann. § 161.001(2).

Conclusion

We conclude
that DFPS presented legally and factually sufficient evidence that termination
of the mother’s parental rights to the children was in their best interest.  Moreover, the mother’s complaints about the
admissibility of the photographs and medical records are without merit.  Accordingly, we affirm the final judgments of
the trial court.

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Massengale.

Justice
Jennings, concurring.