

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00723-CV

**IN THE INTEREST OF E.D.A.**, Child

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-01438
Honorable Richard Garcia, Associate Judge Presiding

Opinion by:  Rebeca C. Martinez, Chief Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Lori Massey Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: March 25, 2026

AFFIRMED

This appeal arises from the trial court's order terminating the parental rights of appellant (hereinafter, "Mother"), the biological mother of E.D.A. In one issue, Mother argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in E.D.A.'s best interest. We affirm.

### I. Background

On September 11, 2024, the Texas Department of Family and Protective Services ("the Department") initiated the underlying proceeding by filing a petition to terminate Mother's

parental rights to E.D.A.[1]  The termination petition was preceded by an investigation that was, in turn, prompted by a referral alleging Mother was using heroin.  The trial court signed a temporary order appointing the Department as E.D.A.'s temporary managing conservator.  A family service plan was adopted, with the primary goal of family reunification.

Ultimately, the Department's termination petition proceeded to a bench trial.  Legal Caseworker Sebastian Chapa, Investigative Caseworker Krystin Garcia, Mother, Mother's mother, and E.D.A.'s foster mother all testified at the bench trial.  At its conclusion, the trial court found by clear and convincing evidence that termination of Mother's parental rights was in E.D.A.'s best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (P), (R), (b)(2).  Mother timely appealed from the termination order.

## II. Standard of Review

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest.  *See id*. § 161.001(b)(1), (2).  Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  *Id*. § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002).  In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm

---

[1] This is Mother's second termination proceeding.  In the first, E.D.A was removed from Mother due to Mother's drug use and was returned after Mother successfully completed the family service plan.  However, Mother relapsed, and the Department reinitiated termination proceedings.

belief or conviction that its finding was true." *Id*. at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

### III. Discussion

### A.      Applicable Law — Best Interest

It is the burden of the party seeking termination to establish that termination is in the child's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. In a best interest analysis, we apply the non-exhaustive *Holley* factors. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The set of factors is not exhaustive, and no single factor is necessarily dispositive of the issue. *Id*. at 372; *In re A.B.*, 269 S.W.3d 120, 126 (Tex. App.—El Paso 2008, no pet.). In analyzing the evidence within the *Holley* framework, evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Moreover, in conducting our review of a trial court's best interest determination, we focus on whether termination is in the best interest of the child, not the best interest of the parent. *In re D.M.*, 452 S.W.3d 462, 470 (Tex. App.—San Antonio 2014, no pet.).

We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, we also consider the factors set

forth in section 263.307(b) of the Family Code. *Id*. § 263.307(b). Additionally, evidence that proves one or more statutory grounds for termination may be probative of a child's best interest, but it does not relieve the State of its burden to prove best interest. *In re C.H.*, 89 S.W.3d at 28.

In conducting a best interest analysis, we consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Additionally, a fact finder may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id*.

## B.    Analysis

Chapa testified that Mother admitted relapsing on heroin. Chapa also noted that Mother failed to submit to any of the eighteen drug tests the Department sent. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) (explaining that a parent's refusal to test supports an inference that she is continuing to use drugs.). Mother testified that she used heroin and methamphetamine when she was pregnant with E.D.A., and that she relapsed on heroin after E.D.A. was removed. Mother's use of narcotics during her pregnancy with E.D.A. exposed E.D.A. to physical danger, and Mother's continued use of narcotics would likely expose E.D.A. to physical and emotional danger in the future. *See Cervantes-Peterson v. Tex. Dep't of Fam. and Prot. Svcs.*, 221 S.W.3d 244, 253–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc). Furthermore, illicit drug use is relevant to multiple *Holley* factors, including the child's emotional and physical needs now and in the future (the second factor), the emotional and physical danger to the child now and in the future (the third factor), Mother's parental abilities (the fourth factor), the stability of Mother's home (the seventh factor), and the acts or omissions which may indicate an improper parent-child relationship (the eighth factor). *See Holley*, 544 S.W.2d at 371–72.

The family service plan required Mother to maintain a stable and drug-free home, show proof of employment and housing, complete a drug assessment and follow any recommendations, submit to random drug testing, complete a psychological evaluation and follow any recommendations, complete a parenting class, and attend visits. Mother failed to complete individual counseling, drug and alcohol assessment, treatment, and failed to take the required parenting class. She also missed fifteen scheduled visits with E.D.A. Mother's failure to avail herself of the counseling program, drug treatment, and parenting classes implicates the fourth *Holley* factor — the parental abilities of the individual seeking custody. *Id.* It also implicates the fifth *Holley* factor — the programs available to assist the individuals seeking custody to promote the child's best interest. *Id.* "A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see also* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (providing courts may consider willingness and ability of the child's family to seek out, accept, and complete counseling services and willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time); *Holley*, 544 S.W.2d at 371–72 (listing parental abilities of an individual seeking custody and programs available to assist the individual as a best-interest factor).

Mother's disengagement from the family service plan stood in contrast to the actions of E.D.A.'s foster parents. At the time of trial, E.D.A. had lived with her foster parents for about eleven months. Chapa testified that E.D.A was "very well bonded with her foster family," who wanted to adopt her. Chapa opined that E.D.A.'s foster parents had been meeting her physical, emotional, and medical needs. He observed that E.D.A. "loves being in the [foster] home," playing

with her foster siblings, and overall "engag[es] very well with her foster family." E.D.A.'s foster mother testified that E.D.A. successfully integrated into the foster home and at school, and affirmed her desire to adopt E.D.A. E.D.A. told her foster mother that she wanted to remain in the foster home.

Chapa described E.D.A.'s behavior after her scheduled weekly one-hour visitation with her family: "She would scream, yell, cry, destroy the room. But, and then, whenever she would finally come back to regulation, she would apologize and she would pick up her stuff without having, you know, to be told to do anything." Chapa reported that on one occasion before E.D.A.'s family visitation, E.D.A. was kicking and screaming because she did not want to attend the visit. To calm E.D.A. down, Chapa had to promise her that she would return to her foster home after the visitation. Later, E.D.A. told Chapa that she liked her foster home and said she would like to stay there. E.D.A.'s foster mother described how she and her husband handle E.D.A.'s outbursts after family visits:

> Lots of love and patience. We also found that — I believe because we were her safe place — that it would come out at home — it would come out here, right? So as we put her in child care a couple days a week. That really helped her to regulate because she's around other children, she's busy. They have that set schedule — I think that's what helped her a lot. Play dates, keeping her busy. After — we usually — it takes a couple of days usually for her to reset after her visits, and so we do lots of activities, usually on Saturdays, to keep her busy. That helps a lot.

The testimony regarding E.D.A.'s life with her foster family implicates the seventh *Holley* factor — the stability of the home or proposed placement. *See Holley*, 544 S.W.2d at 371–72 (listing the stability of the home as a best-interest factor); *see also In re G.V.*, No. 14–02–00604–CV, 2003 WL 21230176, at *5 (Tex. App.—Houston [14th Dist.] May 29, 2003, pet. denied) (mem. op.) (noting the stability that a proposed placement promises "weigh[s] heavily in the court's finding that termination is in the best interest" of a child).

**C.      Disposition**

Our review of the evidence regarding Mother's drug use, failure to avail herself of available programs, and the relative stability of E.D.A.'s foster home yields that the second, third, fourth, fifth, seventh, and eighth *Holley* factors weigh in favor of termination.  Accordingly, after viewing all of the evidence in the light most favorable to the best interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in E.D.A.'s best interest.  *See In re J.F.C.*, 96 S.W.3d at 266.  We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in the child's best interest.  *See id.* Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best interest finding.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *see also In re A.B.*, 437 S.W.3d 498, 505 (Tex. 2014) (recognizing an appellate court need not detail the supporting evidence if affirming a termination judgment on factual-sufficiency grounds).  Mother's sole issue is overruled.

### IV. Conclusion

We affirm the trial court's parental termination order.

Rebeca C. Martinez, Chief Justice