IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00365-CV

 

In
the Interest of H.N.J., J.M.S., J.A.R.,

J.A.R.,
and J.R., Children

 

 

 



From the County Court
at Law No. 1

Johnson County, Texas

Trial Court No. D200800157

 



MEMORANDUM  Opinion










 

            Jesse R. appeals from a
judgment terminating his parental rights to his children, J.A.R., J.A.R., and
J.R.  Jesse complains that section 263.405 is unconstitutional as applied to
him and that the evidence was legally and factually insufficient to terminate
his parental rights.  We affirm.

CONSTITUTIONALITY OF SECTION 263.405

Jesse complains that section 263.405 of
the Texas Family Code is unconstitutional as applied to him because his
appellate counsel was not appointed until after the deadline for filing the
statement of points had passed.  His appellate counsel filed a statement of
points and motion for extension of time pursuant to rule 5 of the Texas Rules
of Civil Procedure, which the trial court granted.  Neither party challenges
the propriety of the trial court’s allowance of the statement of points. 
Additionally, Jesse does not raise any issue that he has been precluded from
making to this Court.  

Jesse has not shown what harm he
suffered as a result of the statute’s operation.  Jesse’s appeal was determined
not to be frivolous and he was provided a copy of the entire record for
purposes of appeal.  Jesse has not identified any issue that he would have
raised if counsel had been appointed sooner and that was not included in his
statement of points on appeal.  Without a showing of harm, we cannot review the
constitutionality of a statute.  See In re D.J.R., 319 S.W.3d 759,
765-66 (Tex. App.—El Paso 2010, pet. denied); Walker v. Tex. Dep't of Family
& Protective Servs., 312 S.W.3d 608, 620, 625 (Tex. App.—Houston [1st
Dist.] 2009, pet. denied).  We overrule issue one.

SUFFICIENCY OF THE EVIDENCE

            In his second issue, Jesse
complains that the evidence was legally and factually insufficient to terminate
his parental rights because the evidence was insufficient to establish abuse or
neglect directed toward J.A.R., J.A.R., or J.R. and there was insufficient
evidence to prove that termination was in the best interest of the children. 
The trial court found that Jesse had committed the acts in section
161.001(1)(D) & (E) and that termination was in the best interest of the
children.

Standard of Review

Grounds for termination must be
established by clear and convincing evidence.  This requires a degree of proof
that will produce in the mind of the trier of fact a firm belief or conviction
as to the truth of the allegations sought to be established.  Tex. Fam. Code Ann. § 101.007 (Vernon
2008).  There is a strong presumption that it is in the child’s best interest
to remain with the natural parent.  In re R.R., 209 S.W.3d 112, 116 (Tex.
2006).  

In a legal
sufficiency review, we look at all the evidence in the light most favorable to
the finding to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that its finding was true.  In re J.F.C., 96
S.W.3d 256, 266 (Tex. 2002).  In doing so, we must assume that the factfinder
resolved disputed facts in favor of its finding if a reasonable factfinder
could do so, and we disregard all evidence that a reasonable factfinder could
have disbelieved or found to have been incredible.  Id.

In a factual
sufficiency review, we must give due consideration to evidence that the trier
of fact could reasonably have found to be clear and convincing.  Id.  We
must determine whether the evidence is such that the factfinder could
reasonably have formed a firm belief or conviction regarding the
allegations.  Id.  We must also consider whether the disputed evidence
is such that a reasonable factfinder could not have resolved that disputed
evidence in favor of its finding.  Id.  To determine if the evidence is
factually sufficient, we give due deference to the trial court’s findings and
determine whether, on the entire record, the trial court could reasonably form
a firm conviction or belief that the parent committed an act that would support
termination and that termination of the parent's parental rights would be in
the child’s best interest.  In re C.H., 89 S.W.3d 17, 28 (Tex. 2002).

Only one ground
of termination is necessary for a judgment of termination when there is also a
finding that termination is in the child’s best interest.  In re A.V.,
113 S.W.3d 355, 362 (Tex. 2003).

Section 161.001(1)(E)

Section 161.001(1)(E) of the Texas
Family Code requires clear and convincing proof that the parent “engaged in
conduct or knowingly placed the child with persons who engaged in conduct
which endangers the physical or emotional well-being of the child.”  Tex. Fam. Code Ann. § 161.001(1)(E)
(West 2008).  This section refers not only to the parent’s acts, but also to
the parent’s omissions or failures to act.  In re J.A., 109 S.W.3d 869,
875 (Tex. App.—Dallas 2003, pet. denied).  Endanger means “to expose to loss or
injury; to jeopardize.”  In re M.C., 917 S.W.2d 268, 269 (Tex. 1996). 
Although endanger means more than a threat of physical injury or the possible
ill effects of a less-than-ideal family environment, it is not necessary that
the conduct be directed at the child or that the child actually suffers
injury.  Id.  The Department need not establish the specific danger to
the child's well-being as an independent proposition; the danger may be
inferred from parental misconduct.  Phillips v. Tex. Dep't of Protective
& Regulatory Servs., 149 S.W.3d 814, 817 (Tex. App.—Eastland 2004, no
pet.).

Factual Background

            The Department became involved
with the family due to an allegation that Jesse had slapped and pushed H.N.S.,
Jesse’s five year old step-child.[1] 
The investigation established that H.N.S., who was not the biological child of
Jesse, was forced to live in an unventilated, unlit closet measuring
approximately six feet by eight feet whenever Jesse was home.  There was only a
small baby blanket for bedding, one plastic chair, a laundry basket with dirty
clothes that reeked of urine, carpet that was filthy and smelled of urine, and
an empty bottle.  A bookshelf would be pushed up against the closet door in
order to keep H.N.S. in the closet.  Additionally, H.N.S. was covered in ant
bites that she had received while in the closet, she was forced to urinate in
the bottle located in the closet, and was forced to stand up while eating.  She
was very dirty as well.

            A second step-child of
Jesse’s, J.M.S., knew that H.M.S. was sent to the closet and showed the
investigators the space and the bottle in which H.M.S. would urinate in the
closet.  J.M.S. was approximately a year younger than H.M.S.  The children were
removed from the home and initially placed pursuant to a safety plan with the
maternal grandmother.  This placement was terminated after H.M.S. was bruised
by the maternal grandmother while being spanked with a belt, in violation of
the Department’s policies against physical discipline.  The children were then
placed with the paternal grandparents pursuant to another safety plan; however,
that placement was terminated when it was discovered that the paternal
grandmother allowed unsupervised access to the children by the parents, used
physical discipline on H.M.S., and allowed their son who was a registered sex
offender into their home with the children present.

Jesse contends that the Department was
required to establish that each of the children were abused or neglected in
order to terminate his rights.  However, Jesse provides no authority to support
this contention.  At trial and on appeal, his argument against termination was
that while he did abuse another child in the home, he would never have treated
his biological children in the same manner.

However, the manner in which a parent
treats other children in the family can be considered in deciding whether that
parent engaged in a course of conduct that endangered the physical or emotional
well-being of a child.  Cervantes-Peterson v. Tex. Dep't. of Family and
Protective Servs., 221 S.W.3d 244, 253 (Tex. App.—Houston [1st Dist.] 2006,
no pet.).  A number of courts of appeals, including this one, have also held
that evidence of a parent’s endangering conduct toward other children or family
members is relevant to a determination of whether the parent engaged in
behavior that endangered the child subject of the suit.  See, e.g., In re
D.L.N., 958 S.W.2d 934, 939 (Tex. App.—Waco 1997, pet. denied) disapproved
on other grounds by In re J.F.C., 96 S.W.3d 256, 267 (Tex. 2002) and
In re C.H., 89 S.W.3d at 26 (holding that a parent’s neglect of older
children could indicate that the child the subject of the suit “would face this
type of treatment in the future if returned” to the parent); In re Baby Boy
R., 191 S.W.3d 916, 925 (Tex. App.—Dallas 2006, pet. denied) (holding
that a parent's guilty plea of aggravated sexual assault of his step-daughter
was evidence of conduct endangering to the well-being of his unborn child); In
re W.J.H., 111 S.W.3d 707, 716 (Tex. App.—Fort Worth 2003, pet. denied)
(holding that abusive conduct toward other children “can be used to support a
finding of endangerment even against a child who was not yet born.”).  Thus,
any abusive or neglectful conduct by Jesse toward J.A.R., J.A.R., and J.R.’s
older sibling, H.N.S., is relevant in an inquiry to determine whether Jesse’s
parental rights to the children should be terminated under section
161.001(1)(E).

There was testimony from caseworkers at
the Department that there was a likelihood that all of the children were at
risk for future abuse similar to that which H.N.S. suffered because the younger
children were beginning to show the same behaviors which led to Jesse’s
frustration with H.N.S.  At the time of the trial, Jesse was incarcerated
because he had pled guilty to endangering a child for the egregious treatment
of H.N.S.  Jesse further testified that he had an anger problem, which he
contended was addressed through an anger management course he took while in
prison.  

There was conflicting testimony
regarding whether Jesse’s biological children were aware of the abuse
perpetrated against H.N.S.  However, H.N.S.’s next older sibling, J.M.S., who
was also not Jesse’s biological child, was fully aware of the treatment of
H.N.S. and that it was used as punishment by Jesse.  While in foster care,
J.M.S. would state that H.N.S. needed to go to the closet when she was in trouble. 
J.A.R. and J.A.R. were in the home during some of the time during the abuse,
and although it appears that they were very young, there was testimony that
they may have been able to perceive to some extent the trauma suffered by
H.S.N. due to Jesse’s cruel treatment.  J.R. was born in the weeks prior to the
removal of the children and thus, not presently affected.

Further, Jesse was serving a twenty-four
month sentence in the state jail for the endangerment charge, but additionally
a ten year community supervision for felony DWI he was serving was revoked and
he was sentenced to eight years in prison for that offense.  That sentence was
being served concurrently with the endangerment sentence, and Jesse expected to
be released on parole almost immediately after the termination hearing.  Until
the time of his release, he intended to place the children with his parents,
from whom the children had previously been removed.  

Using the appropriate standards as set
forth above, we find that the evidence was both legally and factually
sufficient for the trial court to have determined that Jesse engaged in a
course of conduct that endangered the physical or emotional well-being of the
children. 

Best Interest of the Children

To terminate the parent-child
relationship, the trial court must also find that termination is in the best
interest of the children.  Tex. Dep't of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987).  When reviewing the sufficiency of the
best-interest evidence, we apply the nonexclusive factors found in Holley v.
Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).  These factors include (1) the
desires of the children, (2) the emotional and physical needs of the children
now and in the future, (3) the emotional and physical danger to the children
now and in the future, (4) the parental abilities of the individuals seeking
custody, (5) the programs available to assist these individuals to promote the
best interest of the children, (6) the plans for the children by these
individuals or by the agency seeking custody, (7) the stability of the home or
proposed placement, (8) the acts or omissions of the parent that may indicate
that the existing parent-child relationship is not a proper one, and (9) any
excuse for the acts or omissions of the parents.  Id.  The Department
need not prove all of these factors.  In re C.H., 89 S.W.3d at 27.  In
an appropriate case, proof of just one factor may be sufficient.  Id.

Jesse contends that the evidence before
the trial court consisted almost entirely of contradictory opinions regarding
the best interest of the children; however, he does not explain what those
contradictions were.  The testimony from each of the witnesses except for Jesse
was that termination was in the best interest of the children.  

Jesse further contends that the basis
for the opinions regarding best interest was his lack of participation in
services which was impossible due to his incarceration.  However, Jesse was
able to and did participate in some services prior to his incarceration,
including therapy.  His therapist had reported while they discussed appropriate
parenting skills, Jesse did not demonstrate those skills during scheduled
visits with the children while they were voluntarily placed outside the home. 
During that time, the therapist had serious concerns about Jesse’s ability to
apply good parenting skills, even after taking parenting classes and
participating in therapy.  

The Department’s witnesses stated that
they believed that there was a significant risk that Jesse would abuse or
neglect the children if returned to him.  He intended to place the children
with his parents who were allowing a registered sex offender to have contact
with the children.  Jesse proffered no witnesses on his behalf other than
himself to counter the Department’s contentions, and the trial court may have
found his testimony to be incredible.  

The Department’s witnesses also
testified that the children were “absolutely” adoptable due to their young ages
and that adoption was their permanency plan as soon as possible.  

Using the appropriate standards, we find
that the evidence was legally and factually sufficient to support the trial
court’s finding that the termination of the parent-child relationship was in
the best interest of the children.  We overrule issue two.

CONCLUSION

            Having found no reversible
error, we affirm the judgment of the trial court.

 

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Davis, and

            Justice
Scoggins

Affirmed

Opinion
delivered and filed July 13, 2011

[CV06]









[1]
The mother of all five children, Melissa, resided in the home with Jesse and
the children at the time of the removal.  Melissa signed a voluntary affidavit
of relinquishment and her parental rights had been already terminated at the
time of the final hearing pursuant to an order of termination.