In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-20-00286-CV**
**IN THE INTEREST OF D.S.**

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. F-235,209**

## MEMORANDUM OPINION

This is a parental rights termination case. Following a trial to the bench, the trial court terminated the parental relationship between *Danielle* and her biological parents, *Mother* and *Father*.[1] As to Father, the record shows the trial court terminated Father's rights after he signed an affidavit stating that he agreed to relinquish them. After the trial court signed the judgment, Father did not appeal. Mother, however, has appealed each finding the trial court relied upon to terminate her rights. As to

---

[1]To protect the privacy of the child whose rights are at issue in the appeal, we have not used the child's name or those of her parents. Instead, we use *Danielle* for the child, and Mother and Father for her parents. *See* Tex. R. App. P. 9.8 (Protection of Minor's Identity in Parental-Rights Termination Cases).

1

the findings that are relevant to this Court's resolution of Mother's appeal, the trial court found that Mother (1) knowingly allowed Danielle to remain in conditions or surroundings that endangered her physical or emotional well-being, (2) engaged in conduct or knowingly placed Danielle with persons who endangered her physical or emotional well-being, and (3) terminated Mother's rights to Danielle because terminating them is in Danielle's best interest.[2]

On appeal, Mother filed a brief in which she raises five issues. Three of Mother's issues—issues one, two and five—are dispositive of Mother's appeal.[3] In these three issues, Mother argues (1) the evidence is insufficient to show she knowingly placed or allowed Danielle to remain in conditions or surroundings that endangered her physical or emotional well-being, (2) the evidence is insufficient to support the trial court's finding that she engaged in conduct or knowingly placed Danielle with persons who engaged in conduct that endangered her physical or emotional well-being, and (3) the evidence is insufficient to support the trial court's best-interest finding.[4] Because issues one, two and five lack merit, we need not reach issues three and four. So as explained below, we will affirm.

---

[2]*See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (b)(2). To shorten the opinion, all subsequent references to these two subsections are identified by shortening the references to either subsection D or E.
[3]*See* Tex. R. App. P. 47.1.
[4]Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (b)(2).

## Standard of Review

Mother argues the evidence is legally and factually insufficient to support the trial court's findings terminating her parental rights. Under legal sufficiency review, we review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."[5] We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that reasonable factfinders could have disbelieved or found to have been incredible.[6] If no reasonable factfinder could form a firm belief or conviction that the matter the Department needed to prove to support the trial court's judgment is true, the evidence is legally insufficient.[7]

Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations.[8] We give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing.[9] We consider whether the disputed evidence is such that a reasonable factfinder could not have

---

[5]*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).
[6]*Id.*
[7]*Id.*
[8]*Id.*
[9]*Id.*

resolved that disputed evidence in a manner favoring its ruling.[10] If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of its findings is so significant that no reasonable factfinder could have formed a firm belief or conviction about the truth of the matter the Department alleged, we will conclude the evidence is insufficient and order a new trial.[11]

In issues one and two, Mother argues the evidence is insufficient to support the trial court's findings to terminate her rights under subsections D and E of the Family Code.[12] Under subsection D, the Department had the burden to prove that Mother knowingly placed or allowed Danielle to remain in conditions or surroundings that endangered her physical or emotion well-being.[13] While subsection D and E are similar, they are not identical. Under subsection E, the Department had the burden to prove that Mother engaged in conduct or knowingly placed Danielle in conditions or surrounding that endangered her well-being.[14] Under both sections, the Department must prove its claims by *clear and convincing evidence* to obtain a finding that a child's parent violated subsection D or E.[15] Under the Family Code, *clear and convincing evidence* means proof sufficient to "produce

---

[10]*Id.*
[11]*Id.*
[12]Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E).
[13]*Id.* § 161.001(b)(1)(D).
[14]*Id.* § 161.001(b)(1)(E).
[15]*Id.* § 161.001(b).

in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[16]

The difference between subsections D and E is subtle. Under subsection D, the Department needed to prove that Mother <u>knowingly</u> engaged in the conduct that it alleged violated subsection D.[17] Unlike subsection D, subsection E does not require the Department to prove the parent knowingly engaged in the alleged conduct; instead, evidence proving a violation of subsection E requires the Department to prove the alleged conduct endangered the child, regardless of whether the evidence shows the parent <u>knowingly</u> committed the endangering conduct.[18]

Under either section, the Department need not prove the child's parent caused an actual physical injury to her child to prove a claim alleging the parent's conduct endangered the child. Under the Family Code, the Texas Supreme Court has explained that the word *endangerment* under subsections D and E means exposure to loss or injury sufficient to jeopardize a child's physical or emotional well-being.[19] Thus, because no actual physical injury is required to prove endangerment under subsections D and E, the factfinder in a case alleging the subsections were violated has free rein to consider any testimony admitted in the trial showing that a parent's

---

[16]*Id.* § 101.007.
[17]*Id.* § 161.001(b)(1)(D).
[18]*Compare id.* § 161.001(b)(1)(D), *with* § 161.001(b)(1)(E).
[19]*See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

5

conduct exposed the parent's child to loss or injury when deciding whether the conduct endangered the child's well-being.[20]

Evidence of Endangerment

A parent's use of an illegal substance is evidence relevant to whether the parent created an environment sufficient to endanger a child's physical or emotional well-being.[21] In the past, we have explained that under subsections D and E "[t]he factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent."[22] Even when the evidence of the parent's illegal drug use occurred before the child was born, that evidence, when coupled with evidence showing the parent continued to use illegal

---

[20]*See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("It necessarily follows that the endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."); *In re J.L.B.*, 349 S.W.3d 836, 848 (Tex. App.—Texarkana 2011, no pet.) ("Drug use and its effect on a parent's life and [the parent's] ability to parent may establish an endangering course of conduct."); *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child."); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) ("Parental and caregiver illegal drug use and drug-related criminal activity likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being.").

[21]*In the Interest of L.J.*, No. 09-20-00043-CV, 2020 Tex. App. LEXIS 5387, at *11 (Tex. App.—Beaumont July 16, 2020, no pet.); *In re J.T.G.*, 121 S.W.3d at 125.

[22]*In the Interest of M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

substances after the child was born is evidence that a factfinder may consider in deciding whether a parent's drug-related conduct endangered the parent's child.[23] Certainly evidence proving that a parent continued to use illegal drugs and could not quit using them is evidence on which a reasonable factfinder may rely to support its conclusion that the parent "poses a present and future risk of physical or emotional danger to [her] child."[24]

In large part, the Department's claims seeking an order terminating Mother's parental rights hinge on the evidence in the trial that shows Mother has an approximate thirteen-year history of abusing meth. To be fair, some of Mother's use—around one year—occurred shortly before Danielle was born. In addition to Mother's thirteen-year history of using meth, the trial court also heard evidence showing that Mother (despite the assistance and guidance of the Department) has not overcome her inability to control her desire to use that drug.[25]

On appeal, Mother argues the evidence shows she completed a substance abuse program, has stopped using meth, and has acquired the skills she needs to control her use of meth. But Mother overlooks the evidence that allowed the trial court to disbelieve the arguments claiming that since completing a drug rehab

---

[23]*In re J.O.A.*, 283 S.W.3d at 345.
[24]*See In the Interest of X.L.*, No. 09-20-00195-CV, 2020 Tex. App. LEXIS 9640, at *11 (Tex. App.—Beaumont Dec. 10, 2020, pet. denied).
[25]*Id.*

program, she no longer uses meth. The trial court heard testimony showing that the Department opened an investigation into Danielle's case when Mother and Mother's adult daughter were stopped in a car while they were travelling together in an adjacent county. After the officer stopped the car, he learned Mother and her adult daughter had drug paraphernalia in the car, including two pipes like those used to smoke meth. The officer also learned the women had several children who were living in a hotel room in Jefferson County. After receiving a report that Danielle was not being properly supervised, the Department opened an investigation to determine whether the children in the hotel room were okay. The Department filed an emergency petition in the trial court and asked that it allow the Department to take possession of the children who were found in the hotel, including Danielle.

After removing the children from their mothers, Mother submitted hairs to be tested for drugs. The record shows that Mother tested positive for meth on her initial hair follicle test, which was performed in June 2019. Mother then tested positive again for meth on urine tests, which she took in September and October 2019. Mother submitted to additional drug tests in November 2020 during the trial. The reporter's record shows the trial court discussed the results of these tests with the parties before it ruled on the case and that when it ruled, it relied on the results of both tests, both of which were positive for meth. During the trial, however, the

8

Department failed to formally introduce the lab results from the November 2020 tests into the evidence that was admitted in the trial.[26]

That said, not all of Mother's drug tests were positive. The record reflects Mother tested negative for meth in November 2019 after enrolling in a drug treatment program in Indiana, where she was living at that time. Mother moved to Indiana in November 2019 because, according to Mother, she needed to care for other relatives who lived there. The drug treatment program in which Mother enrolled was a plan required by Mother's family service plan. Some, but not all, of Mother's medical records from the drug rehab program were admitted into evidence at the trial.[27] The records Mother made available to the parties show that when

---

[26]On appeal, Mother argues the test results should not be considered as being within our scope of review because the Department never asked the trial court to admit the results of the tests into evidence in the trial. But while the Department never formally introduced the record showing the results of the tests, the record also shows the trial court displayed the test results while the parties were in court and on appeal, Mother has not argued the trial court erred by considering the results of these tests.

When the record from a trial shows the parties and the trial court relied on evidence even though the evidence was never formally introduced, the "evidence is, for all practical purposes, admitted." *Sanchez v. Bexar Cty. Sherriff's Dep't*, 134 S.W.3d 202, 203 (Tex. 2004) (per curiam). We conclude the results of Mother's urine and hair follicle tests that show Mother tested positive for meth during the trial were, for all practical purposes, admitted into evidence in the trial. Accordingly, the fact Mother tested positive for meth on these tests is evidence that we must consider when addressing Mother's complaints that the evidence is insufficient to support the finding that she engaged in conduct that endangered Danielle.

[27]The authorization that Mother signed releasing her medical records from the drug treatment program in which she enrolled while in Indiana shows that she did not authorize the facility to release all her records.

9

Mother was first admitted into the drug treatment program, she was diagnosed with "Amphetamine-type substance use disorder, severe[.]" Mother took four drug tests that are in the records that were before the trial court while she was enrolled in the drug-treatment program, two performed on urine and two performed on hairs. The urine tests, which were based on samples taken in February 2020 and in April 2020, are negative for amphetamines and meth. The hair follicle tests, which were based on samples taken in May and September 2020, are also both negative for amphetamines and meth.

The caseworker assigned to handle Danielle's case cast doubt on the validity of the drug tests Mother took while living in Indiana. According to the caseworker, the tests Mother provided to the trial court that were performed while she was living in Indiana were neither random nor observed. Along with the fact that Mother did not release all of her records from her drug-treatment program, the trial court could have reasonably relied on the caseworker's testimony and doubted the reliability of the results from those tests.

A parent's persistent and continued use of an illegal drug exposes a child being raised by that parent to the possibility the parent may either be imprisoned or impaired.[28] Generally speaking, evidence showing a persistent and continued use of

---

[28]*See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617-18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also In re J.O.A.*, 283 S.W.3d at 345.

a controlled substance is evidence that supports a reasonable inference that the parent's conduct has affected the physical or emotional well-being of the parent's child. When, as here, the testimony demonstrates a parent continued to use illegal drugs even though faced with the loss of his or her parental rights, the factfinder may infer the conduct represents a voluntary, deliberate, and conscious course of action that, by its very nature, endangered the well-being of the parent's child.[29]

In the end, when viewed in the light favoring the verdict, the evidence allowed the trial court to infer that Mother has not conquered her desire to use meth. Here, the trial court had the right to weigh Mother's more than decade-long history of abusing meth against evidence showing that Mother, only recently, had obtained treatment in an effort to gain the skills she needs to discontinue using the drug. The evidence, however, also allowed the trial court to conclude that Mother has not obtained control over her desire to use meth even after she completed a drug-rehab program. When viewed as a whole, the evidence shows the trial court, acting reasonably, could form a firm belief or conviction that Mother has an ongoing and severe substance abuse problem connected to meth.[30] The trial court also could

---

[29]*See Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253-54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (upholding termination based on parent's continued use of drugs).

[30]*See In re J.O.A.*, 283 S.W.3d at 346.

11

reasonably reject Mother's claim that she had acquired the skills she needed to control her desire to use the drug.[31]

We conclude the record contains legally and factually sufficient evidence to support the trial court's conclusion that Mother has an ongoing substance problem that she cannot yet control. Given the evidence of Mother's persistent and continued use of meth, we conclude the Department met its burden to prove that Mother knowingly engaged in a course of conduct by using and continuing to use an illegal substance that endangered Danielle's physical or emotional well-being. Accordingly, we find that Mother's first and second issues challenging the trial court's subsection D and E findings lack merit.[32] Accordingly, Mother's first two issues are overruled.

Best-Interest

In issue five, Mother argues the evidence is legally and factually insufficient to support the trial court's best-interest finding.[33] When evaluating a challenge to a factfinder's best-interest finding, we note that a "strong presumption that the best interest of a child is served by keeping the child with a parent."[34] We also presume

---

[31]*See In re J.F.C.*, 96 S.W.3d at 266.

[32]*See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *In re J.T.G.*, 121 S.W.3d at 125.

[33]Tex. Fam. Code Ann. § 161.001(b)(2).

[34]*In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *see* Tex. Fam. Code Ann. § 153.131.

that a prompt and permanent placement of the parent's child in a safe environment is in the child's best interest.[35] In our review of best-interest findings, we consider the nine non-exhaustive factors that the Texas Supreme Court identified in *Holly*.[36]

In November 2020 when the case went to trial, Danielle was twelve years old. Although Danielle did not testify at the trial, every witness who testified told the trial court they were aware that Danielle wanted to live with Mother. The evidence reflects that Danielle and Mother have a strong bond. Yet, against those factors that weigh in Mother's favor, the trial court had to consider evidence that Mother has a thirteen-year history of using meth. There is also evidence that allowed the trial court to conclude that Mother chose to continue to use meth even after the Department

---

[35]Tex. Fam. Code Ann. § 263.307(a).

[36]In *Holley v. Adams*, the Texas Supreme Court applied the following factors when it reviewed the trial court's best-interest finding:

- the child's desires;
- the child's emotional and physical needs, now and in the future;
- the emotional and physical danger to the child, now and in the future;
- the parenting abilities of the parties seeking custody;
- the programs available to assist the parties seeking custody;
- the plans for the child by the parties seeking custody;
- the stability of the home or the proposed placement;
- the parent's acts or omissions which may indicate that the existing parent-child relationship is improper;
- any excuse for the parent's acts or omissions.

544 S.W.2d 367, 371-72 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b).

removed Danielle from her in June 2019. The evidence showing the extent of Mother's drug problem shows that the problem has been persistent. Mother tested positive for meth after, according to Mother, she was drug free and claimed she had acquired the skills she needed to control her desire for the drug. Additionally, Mother did not enroll in a drug treatment program until six months after the Department removed Danielle from her care. Along with the evidence relevant to Mother's abuse of meth, the trial court also heard testimony that shows Mother never completed a parenting class that the Department had approved.

During the trial, the Department called the caseworker who handled Danielle's case. The caseworker testified she believed it would be in Danielle's best interest for the trial court to terminate Mother's parental rights. The caseworker also discussed the plans the Department had for Danielle. According to the caseworker, there is a family who is willing to take care of Danielle and to provide her with "a forever home" if the trial court terminated Mother's and Father's rights. The caseworker described Mother's lifestyle as transient, explaining that Mother moved multiple times after Danielle was born. Over the past ten years, according to the caseworker, Mother has lived in four states. The caseworker expressed her opinion that Mother has not provided Danielle with a stable home. In June 2019, when the Department took Danielle into its care, Mother was living in a hotel room. Mother moved to Indiana several months later, explaining that she moved there to take care

of her brother after he overdosed on drugs. While living in Indiana, Mother stayed with several of her relatives, in other words, they provided her with only a temporary home. When the case was called for trial in November 2020, Mother was living in a hotel room in Houston. While Mother claimed she could afford to live in a house and that's what she was planning to do with Danielle, Mother never provided the trial court with financial records to support her claims that she is currently earning money from a job or has the financial ability to provide Danielle with a safe and stable home.

Turning to Mother's ability to earn money, the record does not show that Mother demonstrated an ability to retain and maintain stable employment after the Department discovered Danielle in a local hotel. While Mother testified she is earning income restoring furniture, Mother never offered any documents into evidence supporting that claim. During the trial, Mother also agreed she last worked in a full-time capacity in 2018. And while Mother testified she is currently living on her savings, she also testified she has savings of only several hundred dollars and that members of her family supported her after the trial court placed Danielle in the Department's care.

A representative from CASA advised the trial court that CASA believed it was in Danielle's best interest for the court to return Danielle to Mother, pending the

outcome of the drug testing Mother submitted to during the trial.[37] Mother also testified she thought it was in Danielle's best interest for Danielle to be returned to her. But as the factfinder, the testimony showing that Mother loves Danielle and has a strong bond with her as well as the testimony of other witnesses about what they believed is in Danielle's best interest was not binding on the trial court given the trial court's role to act as the finder of facts in the trial.

Deferring to the trial court's role as factfinder, we conclude the record contains legally and factually sufficient evidence to support the trial court's finding that terminating Mother's rights is in Danielle's best interest.[38] Because Mother's fifth issue also lacks merit, it is overruled.

Conclusion

We need not address issues three and four to dispose of Mother's appeal. Even if Mother prevailed on issue three and four, a ruling in her favor on those two issues would not alter the outcome of her appeal.[39] Because the issues that are dispositive

---

[37]The CASA representative who appeared did not testify, but instead made the above representation about CASA's position to the trial court when it asked those present about their claims.

[38]*See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (explaining that a parent's history of drug use is relevant to the trial court's best-interest finding); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ) (allowing a factfinder to give significant weight to a parent's drug-related conduct in making a best-interest finding).

[39]Tex. R. App. P. 47.1.

of Mother's appeal–issues one, two, and five–lack merit, the trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on March 25, 2021
Opinion Delivered May 27, 2021

Before Golemon, C.J., Horton and Johnson, JJ.