**Opinion issued March 17, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00606-CV

————————————

## IN THE INTEREST OF J.A., A CHILD

———————————————————————————————————

On Appeal from the 314th District Court
Harris County, Texas
Trial Court Case No. 2020-00787J

———————————————————————————————————

## MEMORANDUM OPINION

After a bench trial, the trial court entered a decree terminating the mother's

and father's parental rights with respect to their son, J.A. On appeal, the mother

contends that the trial court committed reversible error because the evidence is legally and factually insufficient to support the termination of her parental rights.[1]

We affirm.

## BACKGROUND

J.A. was born in October 2019. The Texas Department of Family and Protective Services received a referral the day he was born because his mother, the appellant, tested positive for amphetamines at the hospital.

The Department later sought termination of the appellant's parental rights as to her son on two grounds: (1) constructive abandonment and (2) failure to comply with the terms of her court-ordered family service plan.

The suit was tried to the bench. The appellant was not present for trial, and the appellant's counsel was unable to get in contact with her. Two witnesses testified: the caseworker assigned to the child and the child's foster mother.

Angela Molina was the assigned caseworker. She testified that J.A. was almost two years old at the time of trial. According to Molina, J.A. first came into the Department's care because his mother had another open Child Protective Services case and had drugs in her system when J.A. was born.

---

[1] The trial court terminated the parental rights between J.A. and his alleged father, whose paternity had not been established as of the time of trial, as well as any unknown father's rights. The parental rights of any ostensible father are not at issue in this appeal.

Molina testified that the Department had provided the appellant a family service plan, which included requirements that she undergo substance-abuse and psychological assessments, maintain stable income and housing, sign a release for the disclosure of certain information, and visit her child. However, the appellant did not complete the substance-abuse assessment. In addition, the appellant did not show that she had stable housing or was employed. Molina testified that the appellant had told her that she was moving from shelter to shelter. That is, the appellant was homeless. Molina testified that the appellant did not complete her service plan in general. The appellant also had not inquired as to what she could do to complete her plan. In contrast, Molina testified, the Department had done what it could to facilitate the services that the appellant had been ordered to complete.

Molina further testified that the appellant had not seen J.A. since last year, when a previous caseworker had been assigned to the child. Trial took place in late August 2021. The appellant had not seen J.A. at all that year. According to Molina, the appellant had not maintained continuous or significant contact with her son since he came into the Department's care. Molina stated that she had no reliable way of contacting the appellant. Thus, Molina indicated, she had to wait until the appellant contacted her.

At the time of trial, J.A. resided with a foster family who had recently adopted his older brother. Molina stated that J.A. is thriving with his foster family and

meeting all his developmental milestones. J.A. has an excellent bond with his brother and is very attached to his foster parents.

Molina testified that the Department was requesting that the court terminate the appellant's parental rights on two grounds: the appellant had not maintained contact with J.A., and she had not completed her family service plan. Molina further testified that termination of the appellant's parental rights was in J.A.'s best interest. According to Molina, the Department's current plan was for J.A.'s foster family to adopt him after termination.

J.A.'s foster mother testified that she had adopted his older brother three years before when the appellant's rights had been terminated in that case.

J.A. had been residing in his foster mother's home since May 2020. His foster mother testified that he was doing great there, was developing well, and had bonded with his brother. She testified that the last time the appellant had visited J.A. was in August 2020 via a virtual meeting for an hour. The appellant never tried to arrange to visit J.A. again afterward.

J.A.'s foster mother testified that she and her husband intend to adopt the child if he becomes available for adoption. She testified that they want J.A. and his brother, whom they have already adopted, to remain together.

The trial court entered a decree terminating the appellant's parental rights as to J.A. It found two independent grounds for termination of the appellant's parental

rights, specifically that she constructively abandoned her son and failed to complete her court-ordered family service plan. *See* TEX. FAM. CODE § 161.001(b)(1)(N)–(O). The trial court also found that the appellant had neither alleged nor proved a defense of inability to comply with her family service plan or that she had in good faith tried to comply with her family service plan. Finally, the trial court found that the termination of the appellant's parental rights was in her son's best interest. *See id.* § 161.001(b)(2).

## DISCUSSION

The appellant contends the evidence is legally and factually insufficient to show she constructively abandoned her son or failed to complete her court-ordered family service plan. She also contends the evidence is legally and factually insufficient to show that termination of her rights is in her son's best interest.

### Legal Standard for Terminating Parental Rights

A parent's rights to the care, custody, and management of his or her child are constitutional in scope. *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). But parental rights are not absolute; the Department may seek termination of the rights of those who are not fit to accept the responsibilities of parenthood. *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). The primary focus in a termination suit is protecting the child's best interest. *Id.*

To terminate parental rights under the Family Code, the Department must establish that a parent committed one or more statutorily enumerated predicate acts or omissions and that termination is in the child's best interest. FAM. § 161.001(b)(1)–(2). The Department need only establish one of these statutorily enumerated predicate acts or omissions, along with the best-interest finding. *See id.*; *In re A.V.*, 113 S.W.3d at 362. But the Department must make these showings by clear and convincing evidence. FAM. § 161.001(b). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

Section 161.001(b)(2)'s best-interest finding is a separate inquiry from section 161.001(b)(1)'s predicate acts and omissions. *In re S.R.L.*, 243 S.W.3d 232, 235 (Tex. App.—Houston [14th Dist.] 2007, no pet.). But evidence used to prove predicate acts or omissions may be probative in deciding a child's best interest. *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

Multiple non-exclusive factors bear on a child's best interest. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include:

- the child's desires;
- the child's emotional and physical needs now and in the future;
- the emotional and physical danger to the child now and in the future;
- the parental abilities of those seeking custody;
- the programs available to assist them to promote the child's best interest;

6

- their plans for the child or the plans of the agency seeking custody;

- the stability of the home or proposed placement;

- the acts or omissions of the parent that may indicate the existing parent–child relationship is not proper; and

- any excuse for the parent's acts or omissions.

*Id.*; *Yonko v. Dep't of Family & Protective Servs.*, 196 S.W.3d 236, 243 (Tex. App.—Houston [1st Dist.] 2006, no pet.). These factors are not exhaustive, no one factor is controlling, and a single factor may be adequate to support termination on a particular record. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

**Legal and Factual Sufficiency Review in Termination Cases**

Because of the elevated burden of proof in a termination suit—clear and convincing evidence—we do not apply the traditional formulations of legal and factual sufficiency on appeal. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

In conducting a legal-sufficiency review in a termination case, we cannot ignore undisputed evidence contrary to a finding, but we must otherwise assume the factfinder resolved disputed facts in favor of the finding. *Id.* at 630–31; *see In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014) (reviewing court credits evidence that supports finding if reasonable factfinder could do so and disregards contrary evidence unless reasonable factfinder could not do so). The evidence is legally insufficient if, viewing all the evidence in the light most favorable to a finding and

7

considering undisputed contrary evidence, a reasonable factfinder could not form a firm belief or conviction that the finding is true. *In re A.C.*, 560 S.W.3d at 631.

In conducting a factual-sufficiency review in a termination case, we must weigh disputed evidence contrary to a finding against all the evidence in favor of the finding. *Id.* We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding. *Id.* The evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding is true. *Id.* In reviewing for factual sufficiency, however, we must be careful not to usurp the factfinder's role. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

Deciding whether, and if so to what degree, to credit the evidence introduced at trial is the factfinder's role, not ours. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). The factfinder is the sole arbiter of witness credibility. *Id.*; *In re J.S.*, 584 S.W.3d 622, 634 (Tex. App.—Houston [1st Dist.] 2019, no pet.). In a bench trial, the trial judge is the factfinder who weighs the evidence, resolves evidentiary conflicts, and evaluates the demeanor and credibility of witnesses. *In re R.J.*, 579 S.W.3d 97, 117 (Tex. App.—Houston [1st Dist.] 2019, pet. denied).

**Analysis**

*Constructive Abandonment*

A trial court may order termination of the parent–child relationship if the court finds by clear and convincing evidence that the parent has constructively abandoned the child. *See* FAM. § 161.001(b)(1)(N). To prove constructive abandonment, the Department must establish four elements: (1) the child has been in the permanent or temporary managing conservatorship of the Department for not less than six months, (2) the Department has made reasonable efforts to return the child to the parent, (3) the parent has not regularly visited or maintained contact with the child, and (4) the parent has demonstrated an inability to provide the child with a safe environment. *Id.*; *see In re G.K.G.A.*, No. 01-16-00996-CV, 2017 WL 2376534, at *4 (Tex. App.—Houston [1st Dist.] June 1, 2017, pet. denied) (mem. op.) (statute requires Department to prove these four elements to establish constructive abandonment).

On appeal, three of the four elements required for constructive abandonment are undisputed. First, the appellant does not dispute that J.A. had been in the temporary managing conservatorship of the Department since May 2020 and thus was in its care for more than a year before her parental rights were terminated. Second, she does not dispute that she had visited J.A. just once in the eight months before trial and therefore had not regularly visited or maintained contact with him. *See In re I.M.*, No. 01-21-00123-CV, 2021 WL 3868764, at *4 n.4 (Tex. App.—

9

Houston [1st Dist.] Aug. 31, 2021, no pet.) (mem. op.) (citing decisions in which multiple visits over several months were held inadequate to show regular contact with child); *In re G.K.G.A.*, 2017 WL 2376534, at *6 (holding sporadic telephone contact over two years did not show regular contact with child). Third, the appellant does not dispute that she is homeless and thus has demonstrated an inability to provide J.A. with a safe environment. *See In re I.M.*, 2021 WL 3868764, at *4 n.4 (indicating homelessness shows inability to provide safe environment); *In re J.S.*, No. 02-19-00231-CV, 2019 WL 5655354, at *6 (Tex. App.—Fort Worth Oct. 31, 2019, pet. denied) (mem. op.) (lack of stable housing is evidence factfinder may consider in deciding whether parent can provide safe environment for child).

The sole element of constructive abandonment that the appellant contests on appeal is whether the Department made reasonable efforts to return J.A. before her parental rights were terminated. Thus, we confine our constructive-abandonment analysis to this challenged element. *See In re I.M.*, 2021 WL 3868764, at *4 (solely analyzing this element as it was only one contested).

This element focuses on the Department's conduct, not the parent's. *In re A.M.E.*, No. 01-21-00214-CV, 2021 WL 4533262, at *6 (Tex. App.—Houston [1st Dist.] Oct. 5, 2021, no pet.) (mem. op.). The issue is whether the Department made reasonable efforts, not ideal efforts. *Id.* When the Department removes a child from his parent's care, it designs a family service plan to reunify the parent and child. *Id.*

Preparing and administering the plan, standing alone, constitutes evidence that the Department made reasonable efforts to return the child. *Id.* The Department need not prove a parent's noncompliance with the plan to show that the Department made reasonable efforts to return the child. *In re I.M.*, 2021 WL 38668764, at *5.

Here, it is undisputed that the Department provided a family service plan to the appellant. According to the caseworker, the Department did what it could to ensure the appellant completed her service plan, but the appellant did not do so. This unrebutted evidence is legally and factually sufficient to show that the Department made reasonable efforts to return J.A. to his mother. *See In re A.M.E.*, 2021 WL 4533262, at *6; *see also In re B.D.A.*, 546 S.W.3d 346, 359 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (unrebutted evidence of elements required under section 161.001(b)(1)(N) was legally and factually sufficient evidence to support termination based on parent's constructive abandonment of child).

The appellant argues that her case is different because she is mentally ill. She posits that the Department was therefore required to show that it took into account her mental illness in proving that it made reasonable efforts to return J.A. In particular, the appellant complains the Department did not introduce any evidence that it made reasonable efforts to ensure that, as a mentally ill person, she understood and had the chance to successfully complete her family service plan. Because the

Department did not introduce this evidence, the appellant argues, the evidence is legally and factually insufficient to prove it made reasonable efforts.[2]

We disagree for two independent reasons. First, our review of the trial court's termination decree for legal and factual sufficiency is confined to the evidence admitted at trial, and the evidence admitted at trial is silent about the appellant's mental health. Second, even if the appellant had introduced into evidence the information about her mental health that she refers to and on which she relies on appeal, the trial court could have reasonably found from the trial record as a whole that the Department made reasonable efforts to return J.A. to his mother's care.

At trial, no one testified that the appellant is mentally ill. Nor did anyone testify that the appellant did not understand her family service plan, or provide testimony from which a factfinder could reasonably infer that the appellant did not understand her family service plan, due to mental illness. The Department introduced several exhibits at trial, but none of them refer to mental illness. The appellant was not present at trial, and no exhibits were introduced on her behalf.

---

[2] The appellant frames this issue solely in terms of the legal and factual sufficiency of the evidence. She does not contend on appeal that her right to due process was violated by the imposition of a family service plan she did not understand. Nor could she make a due-process claim on appeal because she did not make this argument in the trial court. *See In re N.K.T.*, No. 01-16-00439-CV, 2016 WL 6277415, at *8 n.1 (Tex. App.— Houston [1st Dist.] Oct. 27, 2016, no pet.) (mem. op.) (unlike evidentiary sufficiency claims, party must raise due-process claim arising out of supposed lack of understanding of service plan during bench trial to preserve this issue for appeal).

12

Appellant relies on statements made about her mental health by another caseworker, who did not testify at trial, in an affidavit concerning the need to remove J.A. from his mother's care. In the affidavit, this other caseworker, who did not purport to be a mental health expert, stated that the appellant "may have psychiatric issues." Later in the affidavit, the caseworker stated that the appellant "has a history of serious psychiatric disorders that are currently untreated," an assessment that appears to have been based on the appellant's own representations that she had been diagnosed with bipolar disorder, manic depression, and psychosis. The affidavit contains no additional information about the appellant's mental health, apart from some representations the appellant made about the identity of her psychiatric doctors and appointments she had scheduled with them.

But the affidavit in question was not admitted into evidence at trial. Nor did the trial court take judicial notice of this affidavit or any other materials on file. We therefore may not consider the affidavit in our review of the evidence for legal and factual sufficiency because our review is confined to the evidence admitted at trial. *See In re D.L.W.W.*, 617 S.W.3d 64, 78 n.33 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (appellate court cannot consider materials in clerk's record or reporter's record from non-trial hearings that were not admitted into evidence at trial in evaluating sufficiency of evidence supporting trial court's termination decree); *In re K.R.L.*, No. 01-14-00213-CV, 2014 WL 3843520, at *8 (Tex. App.—Houston [1st

13

Dist.] Aug. 5, 2014, no pet.) (mem. op.) (appellate court may consider only evidence introduced by parties at trial when evaluating sufficiency-of-evidence claims). Because the trial record contains no evidence about the appellant's mental health, we reject her claim that the Department's efforts to return J.A. to her care were unreasonable as a result of failure to account for or accommodate her mental illness.

Moreover, even if the affidavit had been admitted into evidence at trial, it provides limited information about the appellant's mental health and does not show that mental illness prevented the appellant from understanding her family service plan, which the Department had not provided to her when the affidavit was made. When considered in the context of the record as a whole, the limited information about the appellant's mental health contained in the affidavit would not have precluded a trial-court finding that the Department did what it could have reasonably done under the circumstances to assist the appellant to complete her service plan.

What constitutes reasonable efforts to return a child to a parent varies with the circumstances. *See In re A.R.*, No. 07-19-00403-CV, 2020 WL 1482454, at *4 (Tex. App.—Amarillo Mar. 26, 2020, pet. denied) (mem. op.) (reasonableness of Department's efforts to be assessed on sliding scale, depending on situation). Here, Molina testified the Department did what it could to facilitate the services the trial court ordered the appellant to complete. But the appellant did not have a fixed address, and the Department had no reliable means of contacting her. Instead, the

Department had to rely on her to make contact. When, as here, a parent does not maintain regular communication with the Department, for whatever reason, a trial court may reasonably find that the parent, rather than the Department, bears the blame for any failure to complete a family service plan and that the Department's provision of the service plan therefore constitutes reasonable efforts. *See In re I.M.*, 2021 WL 3868764, at *4–6 (relying in part on parents' failure to keep in contact with caseworker in holding that Department made reasonable efforts); *In re G.P.*, 503 S.W.3d 531, 533 (Tex. App.—Waco 2016, pet. denied) (Department made reasonable efforts, given mother's failure to keep in contact with caseworker).

The appellant has not suggested anything in particular that the Department could or should have done differently to ensure she understood her service plan or had the opportunity to successfully complete it despite any mental health issues. Notably, the appellant's family service plan included a requirement that she undergo a psychological evaluation. But she did not do so. Without this evaluation, a trial court could reasonably find that the Department had little or no ability to take into account or accommodate the appellant's mental health in assisting her to understand and complete the other requirements imposed by her family service plan. *See In re N.A.V.*, No. 04-19-00646-CV, 2020 WL 1250830, at *7 (Tex. App.—San Antonio Mar. 17, 2020, pet. denied) (mem. op.) (Department could not be faulted for not developing new service plan for mother, given that mother refused to meet with

15

caseworker and caseworker could not assess her needs without meeting); *see also In re K.G.*, 350 S.W.3d 338, 354 (Tex. App.—Fort Worth 2011, pet. denied) (Department made reasonable efforts to return child to mentally ill mother, given that caseworker had encouraged mother to seek treatment for mental problems).

Finally, while evidence of the provision and administration of a family service plan is often the way in which the Department tries to show it made reasonable efforts to return a child to a parent, this is not the exclusive means of proving this element of constructive abandonment. *In re J.W.*, 615 S.W.3d 453, 463 (Tex. App.—Texarkana 2020, no pet.). The Department's provision of access to regular visitation with a child after he has been removed from his parent's care may also constitute evidence of reasonable efforts to return the child. *In re S.B.*, No. 05-20-00055-CV, 2020 WL 5361877, at \*4 (Tex. App.—Dallas Sept. 8, 2020, no pet.) (mem. op.). Here, it is undisputed that the Department made visitation available to the appellant, who generally did not avail herself of the opportunity. This circumstance is further evidence on which the trial court could have reasonably relied in finding that the Department made reasonable efforts to return J.A. to the appellant's care.

Viewing all the evidence in the light most favorable to the trial court's constructive-abandonment finding under section 161.001(b)(1)(N) and considering undisputed contrary evidence, we conclude that a reasonable factfinder could have formed a firm belief or conviction that the appellant constructively abandoned J.A.

In light of the entire record, we conclude that the disputed evidence that a reasonable factfinder could not have credited in favor of the constructive-abandonment finding is not so significant that the factfinder could not have formed a firm belief or conviction that it is true. Thus, we hold that the evidence is legally and factually sufficient to support this finding. *See In re A.C.*, 560 S.W.3d at 630–31.

As the evidence is sufficient to support termination for constructive abandonment under section 161.001(b)(1)(N), we need not separately address the trial court's second ground for termination, the appellant's failure to complete her family service plan. *See* FAM. § 161.001(b)(1); *In re A.V.*, 113 S.W.3d at 362; *see also* TEX. R. APP. P. 47.1 (court to issue opinion that is as brief as practicable but addresses every issue raised and necessary to final disposition of appeal).

### *Child's Best Interest*

Though the appellant challenges the legal and factual sufficiency of the evidence supporting the trial court's best-interest finding, she does not provide any analysis of the evidence in her brief. Nor does she identify any *Holley* factors that weigh against the best-interest finding. We disagree that the evidence is insufficient.

When J.A. was born, the appellant tested positive for amphetamines. In addition, the appellant failed to complete a required substance-abuse assessment.

A test result indicating the use of illegal drugs by an expectant mother during her pregnancy is a fact from which a factfinder could reasonably find that she poses

17

a danger to the emotional and physical wellbeing of her child now and in the future. *See In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (drug use during pregnancy indicates parent not willing and able to provide child with safe environment and supports finding that termination is in child's best interest); *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 254 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (drug use during pregnancy may be conduct that endangers child's emotional and physical wellbeing). And while the trial record lacks any evidence that the appellant has a history of illegal drug use, a factfinder could reasonably infer from her positive drug test result and failure to undergo a substance-abuse assessment that the assessment would have been unfavorable to her. *See In re K.T.S.N.*, No. 01-21-00456-CV, 2022 WL 96737, at *10 (Tex. App.—Houston [1st Dist.] Jan. 11, 2022, no pet. h.) (mem. op.) (parent's refusal to take drug tests, denial that she had drug problem, and failure to follow recommendations made in substance-abuse assessment after having tested positive were circumstances supporting trial court's best-interest finding).

Here, the trial court could have reasonably found the appellant's failure to complete a substance-abuse assessment to be especially significant. Because the appellant's positive drug test result precipitated J.A.'s removal in the first place, the trial court was entitled to infer from her failure to complete a substance-abuse assessment that she lacked the motivation necessary to seek out programs available

to assist her in promoting J.A.'s wellbeing. *See In re A.B.*, No. 07-19-00180-CV, 2019 WL 5199299, at *6 (Tex. App.—Amarillo Oct. 15, 2019, no pet.) (mem. op.) (parent's failure to complete services directly related to reason for child's removal, including substance-abuse assessment, supported finding that termination was in child's best interest because it gave rise to inference that parent did not have ability to motivate himself to seek out resources available to promote child's wellbeing).

The appellant is homeless, and the evidence indicates that this circumstance is not a temporary misfortune. In addition, the Department has had no reliable means of contacting the appellant since it removed J.A. from the appellant's custody.

The need for a safe and stable home is a paramount consideration in deciding whether termination of parental rights is in a child's best interest. *In re O.J.P.*, No. 01-21-00163-CV, 2021 WL 4269175, at *16 (Tex. App.—Houston [1st Dist.] Sept. 21, 2021, no pet.) (mem. op.). Hence, evidence of homelessness will support a finding that a parent cannot give a child a safe and stable home because insecurity and instability are intrinsic to homelessness. *See id.* Given the appellant's history of homelessness, the trial court could have reasonably found that she is unable to meet J.A.'s emotional and physical needs and poses a danger to his emotional and physical wellbeing now and in the future. *See In re I.M.*, 2021 WL 3868764, at *7 (homelessness supported finding that parent was unable to meet child's needs); *Jordan v. Dossey*, 325 S.W.3d 700, 725 (Tex. App.—Houston [1st Dist.] 2010, pet.

19

denied) (unstable and transient lifestyle, including homelessness, supported finding that parent posed danger to child's emotional and physical wellbeing).

In addition, in order for a parent to benefit from programs available to assist her in promoting her child's best interest, the parent must be willing and able to closely interact with the Department and other agencies that provide assistance. *See* FAM. § 263.307(b)(10) (stating that willingness and ability "to cooperate with and facilitate an appropriate agency's close supervision" is relevant consideration in deciding whether parent can provide child with safe environment). Based on the evidence of the Department's inability to reliably contact and communicate with the appellant, the trial court could have reasonably inferred that she would not benefit from programs available to assist her in promoting J.A.'s wellbeing. *See In re T.G.*, No. 14-09-00299-CV, 2010 WL 1379977, at *9 (Tex. App.—Houston [14th Dist.] Apr. 8, 2010, no pet.) (mem. op.) (caseworker's testimony that she was unable to contact parent was evidence supporting finding that termination was in child's best interest because it showed parent would not benefit from assistance programs).

The appellant saw J.A. a single time for about an hour in the eight months preceding trial. She has not asked to see her son since this last visit. In total, she has had little contact with her son in the nearly two years since his birth.

A parent's failure to regularly visit her child after removal may support a finding that termination of the parent's rights is in the child's best interest. *See In re*

20

*T.R.H.*, No. 01-16-00450-CV, 2016 WL 6873061, at *8 (Tex. App.—Houston [1st Dist.] Nov. 22, 2016, pet. denied) (mem. op.) (parent's choice to visit child every other month despite opportunity to visit him more frequently evinced indifference to maintaining strong parent–child relationship). This is because the failure to regularly visit one's child signals that the parent–child relationship is not an appropriate one and that the parent is unwilling or unable to meet her child's emotional and physical needs. *See In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *9 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.) (parent's failure to regularly visit child was circumstance from which factfinder could find that parent was unwilling or unable to fulfill child's most basic emotional and physical needs); *In re M.S.*, No. 01-15-00451-CV, 2015 WL 5769993, at *5 (Tex. App.—Houston [1st Dist.] Sept. 29, 2015, no pet.) (mem. op.) (parent's irregular visitation and failure to attend scheduled visits were circumstances from which factfinder could find that parent was not in position to care for child). Thus, the trial court could have reasonably found that the appellant's failure to regularly visit J.A. weighed in favor of finding that termination is in his best interest.

In contrast, J.A. has bonded well with his foster family, who is prepared to adopt him, just as it adopted his older brother previously. J.A. has been thriving while in his foster family's care, and he is meeting all developmental milestones.

21

When a child is too young to meaningfully express his desires about the termination of parental rights, the factfinder, in assessing the child's best interest, may instead consider whether the child has bonded with his foster family, is doing well in his foster family's care, and has spent minimal time with his birth parent. *In re J.S.*, No. 01-17-0080-CV, 2017 WL 6520437, at *17 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, pet. denied) (mem. op.). On this record, the trial court could have reasonably found that each of these circumstances shows termination is in J.A.'s best interest. *See id.* Moreover, the trial court could have reasonably found that the foster family's plan to adopt J.A. shows termination is in his best interest because this plan evidences that the family will continue to provide a stable home where he can thrive. *In re N.S.M.*, No. 01-20-00764-CV, 2021 WL 1217328, at *7 (Tex. App.—Houston [1st Dist.] Apr. 1, 2021, pet. denied) (mem. op.).

In sum, the record contains evidence that multiple *Holley* factors support the trial court's best-interest finding. These factors include J.A.'s emotional and physical needs now and in the future, the emotional and physical danger to J.A. now and in the future, the programs available to assist the appellant to promote J.A.'s best interest, the appellant's and the foster family's respective plans for the child, the stability of the proposed placement of the child with the foster family, and acts or omissions indicating that the parent–child relationship is not proper. The record contains virtually no contrary evidence with respect to any of the *Holley* factors.

22

Viewing all the evidence in the light most favorable to the trial court's finding that termination of the appellant's parental rights is in J.A.'s best interest and considering undisputed contrary evidence, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination is in J.A.'s best interest. In light of the entire record, we conclude that the disputed evidence that a reasonable factfinder could not have credited in favor of the best-interest finding is not so significant that the factfinder could not have formed a firm belief or conviction that it is true. Thus, we hold that the evidence is legally and factually sufficient to support the best-interest finding. *See In re A.C.*, 560 S.W.3d at 630–31.

## CONCLUSION

We affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Justices Kelly, Goodman, and Guerra.