In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-23-00025-CV

_____

### IN THE INTEREST OF J.C.

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 22-01-00360-CV**

### MEMORANDUM OPINION

Mother appeals the termination of her parental rights to her daughter, Jill.[1] In her appeal, Mother contends that the evidence presented to the trial court was legally and factually insufficient to support the trial court's findings terminating her parental relationship with Jill, including the trial court's best interest finding.[2] We affirm.

---

[1] We refer to Appellant as "Mother," and to the child and her foster mother by pseudonyms to protect their identities; for the same reason, we refer to maternal grandmother as "Grandmother." *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2). The alleged fathers' parental rights were also terminated, but they are not parties to this appeal.

[2] Based on the jury's verdict, the trial court terminated Mother's rights on four predicate grounds, including condition endangerment and conduct endangerment.

# I. Background

The Department opened an investigation into allegations of Mother's alleged neglect of Jill. As a result of that investigation, evidence of Mother's drug use and theft came to light; the Department consequently removed Jill and placed her in foster care. When Mother proved unable to comply with her plan of service, the Department moved to terminate her parental rights to Jill. We summarize below the evidence relevant to this appeal.

## A. Jessica Walker's Testimony

Walker, the Department conservatorship worker, described Mother's efforts to comply with her service plan. She noted that although Mother maintained the required contact with the Department, she failed or missed several drug tests. Walker listed the Department's other concerns regarding Mother's conduct, including Mother's criminal activity and her lack of sobriety, mental health treatment, stability, and a safe home environment. Mother also failed to provide the Department with names and contact information of relatives who might be suitable placements for Jill.

---

*See* Tex. Fam. Code Ann. § 161.001(b)(1)(D) and (E). The trier of fact further found that Mother had failed to comply with a court order incorporating the terms of her plan of service, she had used a controlled substance in a manner that endangered the health or safety of the child, and she had failed to complete a court-ordered substance abuse treatment program, or had continued to abuse a controlled substance after completing a program. *See id*. § 161.001(b)(1)(O), (P).

2

Specifically referencing Mother's criminal history, Walker indicated that Mother had minimized her periods of incarceration, although she conceded that Mother may have been given credit for more days than she physically served. When asked about Mother's compliance with her service plan, Walker noted that although Mother had completed her required parenting classes and Parent Collaboration Group meeting, she had not provided proof of employment.

**B. Karen Vegas' Testimony**

Vegas, the CASA case supervisor, testified that she has observed Mother's visits with Jill, has visited Jill in her foster home, and has participated in Mother's meetings with Department personnel. Vegas recalled that Mother's visits with Jill were "appropriate," but also noted that the residence Mother shared with Grandmother was not a safe place for Jill because it smelled of cigarette smoke and because the five dogs then living there appeared unhealthy. Vegas also observed tripping hazards and a live rat behind the baby crib intended for Jill.

Jill's foster family, in contrast, is meeting her physical and emotional needs. Vegas opined that it would be in Jill's best interest to terminate Mother's parental rights because Mother's drug use and other criminal history put Jill at risk of being left "with nobody to look after her."

## C. Foster Mother's Testimony

Kim Fletcher, Jill's foster mother, testified that Jill had been in her care for a year as of the time of trial. Fletcher described the family as including herself, her husband, and their eight-year-old daughter. They wish to adopt Jill if Mother's and Fathers' parental rights are terminated.

## D. Janell Bolding's Testimony

Bolding is the manager of the Dollar General store location where Mother was seen scanning an incorrect price tag at the checkout counter. Due to that incident, Bolding notified the local police department and gave Mother a trespass warning, banning Mother from returning to the store.

## E. Mother's Testimony

Mother acknowledged her history of addiction, which had cost her previous job of eighteen years. She further admitted her history of theft and credit card fraud. As of the time of trial, however, Mother stated that she had not used methamphetamine, her drug of choice, since August 4, 2022, five months before trial. She also referenced her participation in Narcotics Anonymous and Celebrate Recovery.

Mother stated that after a period of unemployment and inpatient drug rehabilitation, she found work in a patient intake role in a hospital emergency department. She had worked there four months as of the time of trial but had not

4

provided the Department with proof of employment; she averred that she was not required to do so. At that time, Mother had lived with Grandmother for eight months after having lived in hotels for a time.

Mother acknowledged that she did not complete all the drug tests required by her service plan. She explained that many of her missed tests were due to her transportation difficulties and her incarceration. Mother did, however, successfully complete a rehabilitation program involving weekly tests. Mother admitted that she had not completed the requirements set out in her plan of service. She explained Jill's removal by claiming that someone "made a malicious phone call that started this entire case." She denied that methamphetamine and drug paraphernalia were found in a toolshed on Grandmother's property or that she was living in the shed at any time as reflected in the removal affidavit.

If Jill were returned to her, Mother planned to have Grandmother's caregiver tend to both Jill and Grandmother. Mother also noted that she owned a trailer large enough for herself and Jill, and that the trailer was parked on Grandmother's property, allowing her to move between the two structures.

## F. Documentary Evidence

In addition to relevant paperwork regarding Jill's removal and the Department's custody, Mother's plan of service and drug test results were admitted into evidence without objection. Not only does Mother's service plan clearly require

5

her to "provide proof of employment in the form of a check stub, bank statement or letter from employer[,]" her drug test results reveal that Mother tested positive for amphetamine and methamphetamine on February 15, 2022, February 25, 2022, and September 13, 2022.

The documentary evidence also reflects Mother's criminal history, as described above.

## II. Standard of Review

The decision to terminate parental rights must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001(b). Under the Family Code, "'[c]lear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005) (citations omitted). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *In re J.L.*, 163 S.W.3d at 84. In reviewing the legal sufficiency of the evidence in a parental rights termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344–45 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In a factual

6

sufficiency review, the question we must decide is not what we would have found from the evidence had we been seated as the factfinder in the trial. Rather the question is whether from the evidence, as a whole, the factfinder could "reasonably form a firm belief or conviction about the truth of the [Department's] allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). When conducting a factual-sufficiency review, we "give due deference" to the findings that are based on the direct and circumstantial evidence that was admitted before the factfinder in the trial. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (cleaned up). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* In a factual sufficiency review, we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266. We must determine "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *Id.* (quoting *In re C.H.*, 89 S.W.3d at 25). When deciding whether a reasonable trier of fact could have formed a firm belief or conviction that the evidence supports a finding challenged in an appeal, we defer to the factfinder's role as the "'sole arbiter of the witnesses' credibility and demeanor[]'" when the inferences it drew from the evidence before it were reasonable. *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (quoting *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex.

7

2009)).; *see In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

### III. Analysis

### A. The Endangerment Findings

"'[E]ndanger' means to expose to loss or injury[.]" *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied); *see also In re J.O.*, No. 09-21-00341-CV, 2022 Tex. App. LEXIS 1769, at *31 (Tex. App.— Beaumont Mar. 17, 2022, pet. denied) (mem. op.). We are required to consider the sufficiency of the evidence pursuant to Sections 161.001(b)((D) and (E) if challenged. *See In re N.G.*, 577 S.W.3d 230, 235–36 (Tex. 2019).

#### 1. Statutory Ground D (Condition Endangerment)

Under subsection D, parental rights may be terminated if clear and convincing evidence supports the conclusion that the parent "knowingly placed or knowingly

allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). It is not necessary that the child or children have suffered any injury. *See In re J.W.*, 645 S.W.3d at 748.

It is unclear from the record where Mother was living with Jill before Jill's removal from Mother's care. The appellate record, however, suggests that Mother lacked any fixed residence at that time, as shown by the references to living at Grandmother's residence in 2022, and living in a hotel. If Mother and Jill were, in fact, homeless prior to Jill's removal, Jill would have been endangered by this lack of a stable home. *See C.M.M. v. Dep't of Family & Protective Servs.*, No. 14-21-00702-CV, 2022 Tex. App. LEXIS 3739, at *39-40 (Tex. App.—Houston [14th Dist.] June 2, 2022, pet. denied) (mem. op.) (holding that housing instability can constitute condition endangerment). If Mother and Jill were staying in a hotel, such unstable living conditions could be considered condition endangerment for the same reason. *Id.*

If Mother and Jill were residing with Grandmother prior to Jill's removal, the state of that house, as Vegas described it, could be considered a condition of endangerment under subsection D. *See In re J.O.*, 2022 Tex. App. LEXIS 1769, at *29-34 (explaining that unsanitary living conditions may support a finding of condition endangerment). Not only did the house smell of cigarette smoke, but the

9

presence of vermin enabled the jury to find that the house was an endangering living environment.

Giving due deference to the jury's factual findings that Mother knowingly kept Jill in endangering conditions or surroundings we cannot conclude that the jury lacked a firm belief or conviction that the State's allegations were proved by clear and convincing evidence. *See In re J.F.C.*, 96 S.W.3d at 266. Giving due deference to the jury's determination of the facts, we overrule Mother's condition endangerment argument.

## 2. Statutory Ground E (Conduct Endangerment)

Subsection E allows for termination of parental rights if clear and convincing evidence supports the conclusion that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(E). "Conduct" includes acts of omission, and it is not necessary that the conduct be directed at the child or that any injury result from the conduct. *See Boyd*, 727 S.W.2d at 533; *In re J.I.G.*, No. 01-18-00023-CV, 2018 Tex. App. LEXIS 4960, at *21(Tex. App.—Houston [1st Dist.] July 3, 2018, no pet.) (mem. op.). Under Section E, the jury was permitted to consider conduct both before and after Jill's removal. *See In re A.L.H.*, 515 S.W.3d 60, 93 (Tex. App.—Houston [14th Dist.] 2017, pet. denied)

(citing *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Mother admitted her use of methamphetamine, an illegal drug, after Jill's removal. In fact, Mother entered an inpatient drug rehabilitation program while the custody question was pending. Because a parent's continued drug use when the custody of their child is in jeopardy supports a finding of endangerment, we cannot conclude that the jury lacked sufficient evidence to find that Mother's drug use constituted conduct endangerment. *See In re S.R.*, 452 S.W.3d at 361-62 (citing *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253-54 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). We further note that Mother's repeated thefts placed her at risk of additional incarceration, thereby exposing Jill to the risk of being left without a parent to care for her. *In re C.U.D.*, No. 14-21-00538-CV, 2022 WL 710727, *4 (Tex. App.—Houston [14th Dist.] Mar. 10, 2022, pet. denied) (mem. op.) (citations omitted) ("'Although incarceration alone will not support termination, evidence of criminal conduct, convictions, and imprisonment may support a finding of endangerment under subsection (E)'").

We overrule Mother's conduct endangerment argument, also.

## B. The Remaining Termination Findings

Because we conclude legally and factually sufficient evidence supports the trial court's termination order under sections D and E, we need not consider

11

Mother's arguments regarding sections O and P. *See* Tex. Fam. Code Ann. § 161.001(b)(1); *In re N.G.*, 577 S.W.3d at 232–33; Tex. R. App. P. 47.1.

## C. Best Interest Finding

In her final issue, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's determination that terminating her parental rights was in Jill's best interest.

There is a strong presumption that a child's best interest is served by maintaining the child's relationship with her natural parent. Tex. Fam. Code Ann. § 153.131(b); *see also In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (noting that a "strong presumption" exists favoring keeping a child with his or her parent). It is also presumed that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." Tex. Fam. Code Ann. § 263.307(a). To reconcile these seemingly contradictory principles, the trial court is afforded "wide latitude in determining the best interests of a minor child." *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (citing *Leithold v. Plass*, 413 S.W.2d 698 (Tex. 1967) (other citations omitted)).

As the reviewing court, we must decide whether the record, when considered as a whole, supports the trial court's best interest finding. *See In re C.H.*, 89 S.W.3d at 28; *In re O.V.*, No. 09-21-00408-CV, 2022 Tex. App. LEXIS 2127, at *17-18 (Tex. App.—Beaumont Mar. 31, 2022, no pet.) (mem. op.). To make this

determination, we consider the non-exclusive factors identified by the Texas Supreme Court in *Holley v. Adams*, to the extent that they apply to the case before us. 544 S.W.2d 367, 371-72 (Tex. 1976).[3] The Department need not present evidence of all of the *Holley* factors; strong evidence of one factor relevant to the child's safety will support a best interest finding, while scant evidence of each *Holley* factor will not. *See In re C.H.*, 89 S.W.3d at 27.

The Family Code also identifies several additional factors relevant to a best interest analysis. *See* Tex. Fam. Code Ann. § 263.307(b). These include, among others, (i) whether there is a history of abusive or assaultive conduct by the child's family, (ii) whether there is a history of substance abuse by the child's family, (iii) whether the family is willing and able to seek and complete counseling services, (iv)

---

[3] These factors are as follows:

1. the child's desires;
2. the child's current and future physical and emotional needs;
3. the current and future physical and emotional danger to the child;
4. the parenting abilities of the parties seeking custody;
5. the programs available to assist the party seeking custody;
6. the plans for the child by the parties seeking custody;
7. the stability of the home or proposed placement;
8. the parent's acts or omissions that reveal that the existing parent-child relationship is improper; and
9. any excuse for the parent's acts or omissions.

This listing "is by no means exhaustive."

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

the parent's willingness and ability to effect positive personal changes within a reasonable period of time, and (v) whether an adequate social support system consisting of extended family and friends is available to the child. *Id.* § 263.307(b)(7), (8), (10), (11), (13).

### 1. Desires of the Child

Because of Jill's age, a mere fifteen months at the time of trial, there was no direct evidence of her subjective desire regarding her placement. There was, however, evidence that Jill had bonded with her foster family, as shown by her reaction to her foster parents and sister. This evidence weighs in favor of termination.

### 2. Physical and Emotional Needs or Danger

Jill, like any child, needs a safe living environment. Yet, Mother's intent for Jill to reside in Grandmother's home is impractical while Grandmother requires her own personal caregiver. Not only was the home physically unsafe, as Vegas described it, but it is unrealistic to expect Grandmother's caregiver to simultaneously meet the needs of both an infirm adult and an energetic toddler.

This evidence likewise weighs in favor of termination.

### 3. Parenting Abilities

Although Vegas considered Mother's supervised visits with Jill "appropriate," Mother's other activities cast doubt on her parenting abilities. Not only did Mother consider it acceptable to leave Jill in Grandmother's unsafe home, she admittedly

abused illegal drugs and otherwise violated the law while her parental rights were in jeopardy. This evidence also weighs in favor of termination.

### 4. Programs Available

The evidence indicates that Jill is developing normally, and is not currently in need of programs such as speech therapy or other medical intervention. This factor is therefore neutral as to termination.

### 5. Plans For the Child

Mother plans for Jill and herself to share a house with Grandmother, a house that is unsafe in many respects. In addition, she expects Grandmother's caregiver to care for both Grandmother and Jill while Mother is at work. This plan is impractical. Foster Mother, conversely, plans to adopt Jill and give her a safe, stable, permanent home, which is in Jill's best interest. Therefore, this factor weighs in favor of termination.

### 6. Stability of the Home

There is no doubt of the foster home's stability, and that this stability benefits Jill. The appellate record indicates that Mother may have been homeless, in that it alternatively shows her living in a hotel, living in a trailer, or living with Grandmother in a house that smells like cigarette smoke and presents other safety hazards. This factor, like many of the others, weighs in favor of termination.

### 7. Parent's Acts/Omissions/Excuses

The evidence demonstrates that while Jill was in Mother's care, Mother was charged with possession of methamphetamine and theft. While Jill was in foster care, Mother was charged with two additional theft offenses, as well as criminal trespass. Although this drug offense was dismissed when Mother was convicted of the theft offenses, the overall pattern of behavior evidenced by Mother's criminal charges and convictions shows Mother is not a responsible parent. This factor weighs in favor of termination.

### 8. Overall Assessment of Best Interest

Evidence of one *Holley* factor, particularly one relevant to a child's safety, may be sufficient to support a finding that termination is in a child's best interest. *See In re K.F.,* No. 09-21-00078-CV, 2021 WL 3774703, at *6 (Tex. App.—Beaumont Aug. 26, 2021, no pet.) (mem. op.). Moreover, a parent's past performance as a parent is relevant to a determination of present and future ability to provide for a child. *See In re C.H.*, 89 S.W.3d at 28. The evidence reveals that Mother abused methamphetamine, committed multiple theft and similar offenses, and failed to provide Jill with stable housing. This evidence shows Mother's lack of parental abilities and indicates that it is in Jill's best interest that Mother's parental rights be terminated.

We conclude that the evidence is sufficient to have permitted a reasonable trier of fact to form a firm belief or conviction that Jill's best interest was served by terminating Mother's parental rights. Accordingly, we overrule Mother's challenge to the best interest finding.

## IV. Conclusion

Given the evidence presented at trial through witnesses and all exhibits admitted, we hold a reasonable factfinder could have formed a firm belief or conviction that Mother committed a predicate act under subsections D and E. We further hold that a reasonable factfinder could have formed a firm belief or conviction that terminating Mother's parental rights was in the child's best interest. We therefore affirm the trial court's order terminating Mother's parental rights.

AFFIRMED.

                                             _____

                                               JAY WRIGHT
                                                 Justice

Submitted on June 5, 2023
Opinion Delivered June 15, 2023

Before Golemon, C.J., Johnson and Wright, JJ.